Cynthia G. MARTIN, Appellant,

v.

Ralph E. MARTIN, Appellee.

No. 12–91–00059–CV.

Court of Appeals of Texas, Tyler.

Aug. 31, 1992.

Rehearing Denied Dec. 7, 1992.

Blake Bailey, Earl Drott, Tyler, for appellant.

Samuel George, Tyler, for appellee.

BILL BASS, Justice.

Cynthia Martin filed her petition for a bill of review seeking to set aside the child support and property settlement provisions incorporated in the agreed judgment dissolving her marriage to Ralph Martin. She alternatively pled for a division under section 3.91(a)[1] of the TEXAS FAMILY CODE of $6,000,000.00 of the retained earnings of Petrofac, Inc., property which she alleges was not disposed of in the decree. She brought another action against three of Ralph Martin's daughters and the directors of Petrofac, Inc. for conspiring with Ralph Martin to retain the community earnings in the corporation and to conceal from her the true value of the Petrofac, Inc. stock.

Ralph Martin moved for summary judgment "on the pleadings" contending that Cynthia Martin's alternative pleading for a division of community property not included in the divorce decree action under section 3.91 demonstrated an adequate remedy at law. He also asked for summary judgment on the entire case, urging that the summary judgment evidence proved that, as a matter of law, Cynthia Martin could not show a meritorious claim which she had been prevented from making by the fraud or wrongful acts of Ralph Martin, unmixed with negligence or fault of her own. Ralph Martin also urged that Cynthia Martin's petition for bill of review be dismissed at the prima facie hearing mandated by *Baker v. Goldsmith*, 582 S.W.2d 404 (Tex. 1979), because she could not present prima facie proof of a meritorious claim.

The trial court heard the motions for summary judgment and conducted a *Baker v. Goldsmith* hearing to determine if Cynthia Martin could offer prima facie proof of a meritorious claim. The transcript of the depositions and affidavits presented at the hearing contains fourteen volumes. The trial court rendered an interlocutory order dismissing the bill of review because Cynthia Martin had "failed to meet her burden of establishing a prima facie case to warrant a full trial on the merits." The order also granted Ralph Martin's motion for

---

1. "If a final decree of divorce or annulment rendered by a Texas court failed to dispose of property subject to division under Section 3.63 of this code even though the court had jurisdiction over the spouses or over the property, the court shall divide the property in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX.FAM.CODE ANN. § 3.91(a) (Vernon 1992).

summary judgment on the pleadings and implicitly denied his motions for partial summary judgment and for summary judgment on the entire bill of review. The trial court then severed the bill of review proceeding from the other two causes alleged in Cynthia Martin's petition. We will reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.

Cynthia and Ralph Martin married in August, 1979. At the time of their marriage, Ralph Martin owned a substantial amount of property. Cynthia Martin, on the other hand, had almost no property when they married. At the time they married, Ralph Martin owned and worked for a company named Marsco. In 1981, Ralph Martin sold his interest in Marsco for $1,125,000.00 cash and a note for $3,000,000.00 which later became worthless. In August 1981, Ralph Martin purchased a fifty percent interest in Petrofac, Inc., for $25,000.00. The money came from a community checking account. Thereafter, Ralph Martin devoted most of his time to the management of Petrofac, Inc. Cynthia Martin took no active part in the business.

One child was born during the marriage.

Cynthia Martin was hospitalized for severe depression during 1985, and continued under her doctor's care until 1987. In December 1986, Cynthia Martin filed for divorce. Ralph Martin's inventory of separate and community property, filed in December of 1987, listed as part of his separate estate 45,000 shares of Petrofac stock valued at $62.2314 per share as of 6/15/87, for a total value of $2,800,413.00. Petrofac, Inc. had bought 5,000 shares from Ralph Martin at this price the previous December. The value was calculated according to a contractual formula required by the company by-laws. This value represented a spectacular increase from the fifty cents a share for which it had been purchased six years earlier. Ralph Martin contested the conservatorship of the child. During the pendency of the suit the child continued to live with her mother. Ralph Martin's lawyer took numerous depositions, much of it in an effort to prove Cynthia

Martin's marital misconduct and her unsuitability, psychologically and morally, to serve as the child's conservator. During the two year pendency of the suit, Cynthia Martin's attorney conducted almost no discovery and deposed no one.

A final decree of divorce incorporating the parties' agreement incident to divorce was rendered in December 1988. The joint agreement provided for joint managing conservatorship, but with Cynthia Martin having primary custody of the child. Child support was set at $1,500.00 per month. Cynthia Martin received her jewels, furs, and personal effects, a new Cadillac, $20,000.00 in cash and two cash payments of $12,000.00, each to be made on the first and second anniversary of the divorce conditioned upon her not smoking in the child's presence and continuing to reside in Smith County. She also received $3,000.00 per month in contractual alimony for 120 months. Ralph Martin received the rest of the property, most of which he had claimed as his separate property. Even using the values conceded by him in his inventory, the value of the property that he received amounted to several million dollars. At the final hearing, Cynthia Martin was closely questioned by her lawyer, her husband's lawyer and by the court about her approval of the joint agreement regarding conservatorship and the division of the property. We quote from the judge's interrogation of Cynthia Martin:

> THE COURT: You believe it is a fair settlement?

> (Cynthia Martin)

> THE WITNESS: I want my child. I want custody of my child, is the main thing.

> THE COURT: But do you believe it is a fair settlement? Let's talk about the property, first. Are you satisfied that this is a fair settlement regarding the property?

> THE WITNESS [CYNTHIA MARTIN]: No, I'm not really satisfied. *But it could be taken back to Court,* and I want my child, and I've been threat-

ened that she would be taken away from me. (Emphasis added).

.    .    .    .    .

THE COURT: ... But considering that you have had to give and you've gotten something in return, are you satisfied that this is the settlement that you are asking the Court to approve?

THE WITNESS: Yes.

....

In October of 1989, Cynthia Martin filed her petition seeking a bill of review. Her affidavit in support of her petition and her other evidence offered at the prima facie hearing showed the following facts. She stated that she knew the Petrofac stock had been purchased during their marriage for $25,000.00. She stated throughout the two-year pendency of the divorce action, her husband had maintained that, because of its indebtedness and the recession in the oil industry, the company faced an uncertain future. She claimed that he consistently told her that the company had scarcely enough work to stay in business. However, he also told her that if she tried to get the Petrofac stock, he would attempt to prove her an unfit mother by proof of her mental health history, her sexual abuse by a step-relative as a child, her sexual misconduct and drug use. If she succeeded in obtaining an interest in Petrofac, he threatened that he would walk away from the company and open another similar business leaving the company's stock valueless. If she cooperated, he promised to provide enough alimony so that she could live comfortably; otherwise, he would see that she was "out on the street" without her child. She was unfamiliar with business and had always trusted her husband in matters of this kind. Because she believed her husband's threats, she instructed her attorney not to pursue the characterization or valuation of the Petrofac stock.

Four months after the divorce was granted, she claimed that she discovered that her husband had just received a $2,800,000.00 dividend from Petrofac to pay his income tax for 1988. Ralph Martin, she stated, bragged about how he used the threat of trial to keep the company intact, and that when the divorce was granted there was $6,000,000.00 of retained community earnings in Petrofac. She asserted that she was kept from knowing the true value of the community estate by the threats and fraudulent statements of Ralph Martin. If she had known the true facts, she stated that she would have asserted a claim to her fair share of the community retained earnings in Petrofac (a subchapter S corporation) and to a division of the interest of the Petrofac stock to which the community estate was entitled because of its original community character or by way of reimbursement. Other evidence presented showed that the retained earnings alone were approximately eight times the community liabilities shown in Ralph Martin's inventory filed in connection with the divorce.

At the time of the divorce, Ralph Martin's Petrofac stock was worth at least $9,000,000.00 if valued by the formula required by the company. Cynthia Martin's attorney at the divorce trial testified by deposition that Cynthia Martin had discouraged him from attempting to discover the character and value of the Petrofac stock and Ralph Martin's other holdings because of his threat of an ugly custody battle that she might lose.

In support of his various motions for summary judgment and as rebuttal at the prima facie hearing, Ralph Martin introduced evidence showing that the Petrofac stock, though purchased during the marriage, out of a community account, was purchased by the proceeds from the sale of the Marsco stock, undeniably his separate property. He presented other evidence showing that, far from hiding the value of the stock or its earnings, his attorneys had made several offers to allow Cynthia Martin's attorney to investigate the financial condition of Petrofac, Inc., none of which were accepted. He also cited Cynthia Martin's failure to conduct discovery regarding the value or character of the property, and the absence of any contemporaneous record of threats or intimidation in her diary, or her attorney's file, or in his correspondence with her. Ralph Martin argued that

her simultaneous assertion of a legal remedy, the right to a division under TEX.FAM. CODE 3.91 of property not covered by the divorce decree, barred her from seeking a bill of review, an equitable remedy. He contended that her reply that the matter "could be taken back to court" indicated that her bill of review was brought in bad faith. He pointed out that he was under no obligation to update his inventory during the long pendency of the suit. Ralph Martin argues that her failure to discover the value of the Petrofac stock or its earnings was not due to his fraud, but to her own lack of diligence. The threat to press for custody with all the evidence at his disposal was, he maintains, a remedy which he possessed the legal right to pursue and did not constitute legal duress. Finally, he argued that even if fraud was conceded, it was intrinsic not extrinsic fraud, and therefore could not serve to support a bill of review.

A party seeking a bill of review to set aside a final judgment must prove three elements: (1) a meritorious defense to the cause of action alleged to support the judgment, or a meritorious claim, (2) which he or she was prevented from making by the fraud or wrongful act of the opposing party, and (3) unmixed with the fault or negligence of the petitioner.[2] *Alexander v. Hagedorn,* 148 Tex. 565, 568, 226 S.W.2d 996, 998 (1950); *Hanks v. Rosser,* 378 S.W.2d 31, 34 (Tex.1964). Only extrinsic fraud will support a bill of review. Extrinsic fraud is wrongful conduct of the successful party practiced outside of an adversary trial, practiced directly upon the defeated party, his agents, or witnesses, and which effectively denies the losing litigant the opportunity to fully litigate all of the rights or defenses he or she was entitled to assert. *Alexander v. Hagedorn,* 226 S.W.2d at 1001. Extrinsic fraud must be collateral to the matter actually tried and not something that was actually or potentially in issue in the trial. *Montgomery v. Kennedy,* 669 S.W.2d 309, 312 (Tex.1984).

The procedure in a bill of review proceeding is set out in *Baker v. Goldsmith,* 582 S.W.2d 404 (Tex.1979). The bill of review petitioner must allege with particularity sworn facts sufficient to constitute a defense or claim. The petitioner must then, as a pre-trial matter, present prima facie proof to support the alleged meritorious defense or claim. At this hearing, *the only relevant inquiry* is whether the petitioner has presented prima facie proof of a meritorious claim or defense. *Beck v. Beck,* 771 S.W.2d 141, 142 (Tex. 1989). A prima facie defense or claim is presented if it is determined by the trial court that the petitioner's claim or defense is not barred as a matter of law, and that he or she will be entitled to judgment on retrial *if no contrary evidence is offered. Baker v. Goldsmith,* 582 S.W.2d at 409.

> Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with *such other evidence* that the trial court *may receive in its discretion.* The bill of review defendant may respond with like proof showing that the defense is barred as a matter of law, but factual questions arising out of factual disputes are resolved in favor of the complainant for the purposes of this pretrial, legal determination. If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case.

*Id.* (emphasis added).

If a meritorious claim or defense at the pre-trial hearing is shown, only then should the trial court proceed to the adjudication of the remaining two issues, (1) extrinsic fraud of the opposing party justifying the failure to present the claim or defense, (2) unmixed with the petitioner's fault or negligence. *See Beck v. Beck,* 771 S.W.2d at 142. The trial court may conduct the trial of the remaining two issues in conjunction with the re-trial of the underlying case or it may try the two remaining bill of review issues separately. The

---

**2.** However, a judgment entered without proper notice to the defendant is violative of due process, and the judgment may be set aside without a showing of a meritorious defense. *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988).

bill of review petitioner may demand a jury trial upon these two elements. *See Rathmell v. Morrison,* 732 S.W.2d 6, 16 (Tex. App.—Houston [14th Dist.] 1987, no writ).

■ To establish the remaining two requisites for the granting of a bill of review, the petitioner must do more than offer prima facie proof of their existence. The petitioner must assume the burden of proving to the fact finder by a preponderance of the evidence that the judgment was rendered as a result of the fraud, accident, or wrongful act of the opposite party or official mistake, unmixed with the fault or negligence of the petitioner. *Baker v. Goldsmith,* 582 S.W.2d at 409. A summary judgment may be granted against the bill of review petitioner if the opponent can establish, as a matter of law, the absence of any of the three elements. *Kennell v. Kennell,* 743 S.W.2d 299, 300 (Tex.App.— Houston [14th Dist.] 1987). However, it must be remembered that only prima facie proof is required to establish a meritorious claim or defense whereas the rendition of an improper judgment because of the fraud or wrongful act of the successful party unmixed with the fault or negligence of the petitioner must be shown by a preponderance of the evidence.

■ In her first point, Cynthia Martin complains that the trial court reversibly erred in dismissing her petition for bill of review because she had "failed to meet her burden of establishing a prima facie case to warrant a full trial on the merits." The only question confronting the trial court at the initial prima facie hearing required by *Baker v. Goldsmith* was whether or not prima facie proof of a meritorious claim or defense had been presented by the petitioner. *Beck v. Beck,* 771 S.W.2d at 142. The petitioner has presented satisfactory proof of a meritorious claim if it is shown that he or she will be entitled to judgment *if no contrary evidence* is offered. Therefore, the decision must be made without considering any controverting evidence offered by the opponent on this issue. The question of the fraud or wrongful act of the opponent or the negligence or fault of the petitioner is not before the court and so

evidence bearing on these issues should not be considered. Cynthia Martin has shown that, far from being in precarious financial condition, the corporation was entering into a period of prosperity, that its stock was worth at least three or four times the value shown on Ralph Martin's inventory, and that during the year before the divorce, Petrofac, a subchapter S corporation, retained six million dollars of community income. The distribution of this income to Ralph Martin commenced shortly after the divorce became final.

Reviewing the evidence offered by Cynthia Martin as prima facie proof of her meritorious claim, we believe that *if no contrary evidence were offered,* she has demonstrated that she would obtain a more favorable property division on retrial. We conclude that the trial court erred in holding that, as a matter of law, Cynthia Martin did not present prima facie proof of a meritorious claim. The point is sustained.

■ In her fifth point, Cynthia Martin contends that the trial court erred in granting judgment on the pleadings. Although denominated summary judgment, it was granted, not upon the proof but "on the pleadings," on the narrow ground that Cynthia Martin, by alternatively seeking a division of undivided assets under Tex.Fam. Code § 3.91, had asserted an adequate remedy at law barring her from pursuing a bill of review, an equitable remedy. This was the only ground asserted by Ralph Martin in his "Motion for Summary Judgment on the Pleadings," and it was clearly the only basis for the trial court's judgment. The trial court did not find, nor does Ralph Martin concede, that Cynthia Martin has an adequate remedy at law, but only that she had asserted a legal remedy. To demonstrate the absence of an adequate legal remedy, the petitioner need only show the absence of any adequate legal remedy against the judgment under attack, such as a motion for new trial or appeal and a sufficient excuse for not asserting those legal remedies. *French v. Brown,* 424 S.W.2d 893, 895 (Tex.1967); *National Bank of Texas v. First National Bank of Round Rock,* 682 S.W.2d 366, 369 (Tex.

App.—Tyler 1984, no writ). In the instant case, Cynthia Martin stated that she did not discover the fraud nor did Ralph Martin cease threatening her until after the time had passed for a motion for new trial or an appeal. Alternative pleadings of equitable and legal remedies is permitted by TEX. R.CIV.P. 48. The trial court erred in granting Ralph Martin's motion for "summary judgment on the pleadings." The point is sustained.

The trial court, at the request of the petitioner, made findings of fact bearing on the issues of Ralph Martin's fraud or wrongful conduct, and Cynthia Martin's negligence or fault. The trial court found that fraud, if shown, was intrinsic not extrinsic, that Cynthia Martin was not prevented from presenting her claim by Ralph Martin's wrongful conduct, but by her own negligence or that of her attorney.

The balance of Cynthia Martin's points of error attack these fact findings. The findings do not relate to or serve as a basis for the orders contained in the judgment, that is the order granting judgment on the pleadings and the order dismissing the bill of review for failure to prove a prima facie meritorious claim. Findings such as these are pertinent to the second and third requisites for a bill of review and could only be made in connection with an adjudication on those issues. Although there is voluminous evidence in the transcript relating to these issues, the trial court, as Ralph Martin acknowledges, implicitly denied the summary judgment urged on these grounds (Ralph Martin's "Motion for Summary Judgment Against the Bill of Review"). Since the trial court held that no meritorious claim was shown at the prima facie hearing, the court did not reach an adjudication concerning these two elements except in connection with Appellee's motion for summary judgment on the bill of review. That motion was denied. Since the findings concern issues beyond the permissible scope of inquiry at the prima facie hearing and do not serve to support the judgment on the pleadings, they are irrelevant to the resolution of the case. Therefore, we need not consider Appellant's remaining points of error attacking them.

There are two matters raised by Ralph Martin which he urges operate to bar Cynthia Martin from equitable relief. Although apparently not relied upon by the trial court in arriving at its judgment, we will respond to the arguments because they may be raised at a retrial.

First, Ralph Martin argues that Cynthia Martin's acceptance of the benefits of the judgment preclude her from seeking to set it aside. However, her acceptance of the community property disposition made in the original judgment does not bar her, as a matter of law, from a review of that disposition since she alleged and offered proof that she was led into the agreement by the fraud and threats of Ralph Martin and through no fault or negligence of her own. *Kessler v. Kessler*, 693 S.W.2d 522, 525 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Second, at the final hearing on the divorce, Cynthia Martin stated, "I know it can be taken back to court" in response to the trial judge's question about the fairness of the settlement. Ralph Martin contends that her statement demonstrates bad faith which should defeat her claim for equitable relief. Considered in the context in which it was made, we believe the statement was an expression of her fear that she might lose the conservatorship of her child if the case went to trial. The statement, taken in context, is not conclusive proof of bad faith barring her from seeking equitable relief.

Ralph Martin brings three points of error. In his first point, he insists that the trial court erred in severing the bill of review proceeding from Cynthia Martin's alternative cause of action and third party action. He argues that Cynthia Martin moved for severance and the trial court ordered severance for the sole purpose of allowing an appeal of an otherwise interlocutory order. TEX.R.CIV.P. 41 grants the trial court wide discretion in questions of severance. "A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3)

the severed claim is not so interwoven with the remaining action that they involve the same facts and issues." *Guaranty Federal Savings Bank v. The Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). We conclude that the two causes from which the bill of review proceeding was severed are discreet and independent causes of action involving different parties and issues. Although all of the causes relate generally to matters arising out of the divorce, the bill of review is not so interwoven with the remaining actions that they involve identical facts and issues. The trial court did not abuse its discretion in ordering severance. The point is overruled.

In his second and third points of error, Appellee contends that the trial court erred in not granting his motion for partial summary judgment concerning the separate property character of the Petrofac stock, and in not granting his "Motion for Summary Judgment on the Entire Case" (entire bill of review case). An order denying summary judgment is not appealable. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). The points are overruled.

The judgment is *reversed and the cause remanded to the trial court for further proceedings* consistent with this opinion.