Patty L. ELLIOTT, Appellant,

v.

Bryan V. ELLIOTT, B & E Industries, Inc., d/b/a Sports Promotion Network, Franchelle Byington, and Frank R. Jelinek, Appellees.

No. 2–99–207–CV.

Court of Appeals of Texas, Fort Worth.

June 29, 2000.

Rosendo Rodriguez, Jr., Wichita Falls, for appellant.

Michael F. Pezzulli, Carol E. Farquhar, Pezzulli & Loewinsohn, L.L.P., Frank R. Jelinek, Frank R. Jelinek, Inc., Arlington, for appellee.

Panel A: DAY and GARDNER, JJ., and FARRIS, J.(Retired, Sitting By Assignment).

## OPINION

ANNE GARDNER, Justice.

### I. Introduction

Appellant, Patty Elliott, appeals the judgment of the trial court denying all relief on her bill of review and awarding $10,000 in attorney's fees and costs to Appellee, Bryan Elliott. In two issues, Appellant contends that the trial court erroneously excluded evidence of expert opinions of several mental healthcare providers, and erred by denying Appellant's bill of review and awarding attorney's fees in favor of Appellee. Because Appellant failed to present prima facie proof of a meritorious defense as an essential ele-

ment of her bill of review and exclusion of the expert opinions was harmless error, we affirm the trial court's judgment.

### II. Factual Background

Patty Elliott married Bryan Elliott in March 1986. There were no children born to the marriage. Bryan Elliott formed B & E Industries, Inc. ("B & E") in 1991, during the marriage. Bryan Elliott held fifty percent of the stock in B & E Industries, Inc., with the remaining fifty percent owned by his grandmother.[1]

Bryan Elliott filed suit for divorce in August 1994. At about the same time, Patty Elliott was fired from her job as a flight attendant at American Airlines for perpetrating a fraud. Patty Elliott was consequently unemployed at the time of the divorce decree in November 1994. Bryan Elliott was represented in the divorce by attorney Frank Jelinek. Despite strong advice from a friend and a professional counselor, Patty Elliott did not employ an attorney to represent her in the divorce.

Patty Elliott went with her husband to Jelinek's office to sign the divorce documents on November 1, 1994. She understood that Jelinek was not acting as her attorney. On that date, she signed a buy/sell agreement, an agreement incident to the divorce, an employment agreement with B & E, and the divorce decree.[2] Under the agreement incident to the divorce and the buy/sell agreement, the community estate's fifty-percent interest in B & E was divided forty-five percent to Bryan Elliott and five percent to Patty Elliott. The employment agreement provided for Patty Elliott to receive payments of $1,810 per month from B & E for a period of four years, for a total of approximately $86,000. Patty Elliott also received significant

---

1. Appellant named the grandmother, Franchelle Byington, as a defendant to this action, along with B & E Industries, Inc., and Sports Promotion Network, an assumed name under which the company did business.

2. The agreed divorce decree was signed by the trial court two days later, on November 3, 1994.

amounts of jewelry and furnishings under the agreed property division.

Bryan Elliott assumed the existing debt incurred by the community for loans in starting up the business and to sustain the cash flow of B & E. In addition, he took responsibility for approximately $30,000 in credit card debt. The parties also agreed that B & E would pay the debt owed on Patty Elliott's Saab automobile, amounting to about $7,500. Patty Elliott took responsibility under the agreement for debts amounting to approximately $3,000.

It is undisputed that Bryan Elliott paid all of the debts as agreed. With the exception that she claimed she was not allowed to perform work at B & E, Patty Elliott received everything promised to her, including all of the monthly payments under the employment agreement from November 1994 to October 1998.

Patty Elliott brought this proceeding as an equitable bill of review on October 30, 1998, seeking to: (1) vacate and set aside the provisions of the decree and the agreement incident to divorce awarding property to Bryan Elliott; (2) vacate and set aside the finding of insupportablility in the decree; and (3) vacate and set aside all of the buy/sell and employment agreement incident to the decree. Patty Elliott alleged that she was mentally incapacitated at the time of the divorce and that Bryan Elliott committed fraud, resulting in a grossly disproportionate division of the marital estate in favor of Bryan Elliott.

The trial court conducted a hearing on December 9, 1998, on motions to dismiss filed by the Elliott Defendants. On that date, the trial court took under advisement the motion to dismiss and scheduled a pretrial hearing for April 8, 1999, pursuant to the procedure prescribed by the Supreme Court of Texas in *Baker v. Goldsmith* for bill of review proceedings.[3] Following the *Baker v. Goldsmith* hearing, the trial court rendered its final judgment denying all relief sought by Patty Elliott and awarding

$10,000 in attorney's fees and costs to Bryan Elliott.

## III. DISCUSSION

### 1. Baker v. Goldsmith Hearing

 A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment which is no longer appealable or subject to motion for new trial. *See Baker*, 582 S.W.2d at 406. Rule 329b(f) of the Texas Rules of Civil Procedure provides that "[o]n expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause ..." TEX.R. CIV. P. 329b(f). The "sufficient cause" upon which a judgment may be set aside on bill of review is narrowly construed because of the fundamental policy that judgments must become final at some point. *See Transworld Fin. Servs., Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex.1987).

 It is well-settled that a plaintiff seeking to set aside a judgment by bill of review must establish three elements: "(1) a meritorious defense to the cause of action alleged to support the judgment; (2) which he was prevented from making by the fraud, accident or wrongful act of the opposing party; (3) unmixed with any fault or negligence of his own." *Baker*, 582 S.W.2d at 406–07 (quoting *Alexander v. Hagedorn*, 148 Tex. 565, 568, 226 S.W.2d 996, 998 (1950)).

 In *Baker v. Goldsmith*, the supreme court established the procedure, the standard of proof, and the order of proceedings to be followed on a bill of review. 582 S.W.2d at 408–09. The bill of review complainant must file a petition, alleging factually and with particularity that the prior judgment was rendered as the result of fraud, accident or wrongful act of the opposite party, or official mistake unmixed with his own negligence. *Id.* The com-

---

3. 582 S.W.2d 404 (Tex.1979).

plainant must further allege, with particularity, sworn facts sufficient to constitute a meritorious defense to the original judgment. *Id.*

■ At a pre-trial hearing, the complainant must present "prima facie" proof of the alleged meritorious defense. *Id.* A prima facie meritorious defense is made out when it is determined that the complainant's defense is not barred as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered. *Id.* at 409. This preliminary showing is essential to assure the court that valuable resources will not be wasted by conducting a "full-blown" trial on the merits. *Id.* at 408.

■ Whether a prima facie defense has been presented is a question of law for the court. *Id.* Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion. *Id.* at 409. The bill of review defendant may respond with like proof showing that the defense is barred as a matter of law, but factual questions arising out of factual disputes are resolved in favor of the complainant for the purposes of this pretrial, legal determination. *Id.* If the court determines that a prima facie meritorious defense has not been presented, the proceeding terminates and the trial court shall dismiss the case. *Id.*

### 2. Meritorious Defense

■ For the sake of efficiency, we will address Appellant's points in reverse order. In her second issue, Patty Elliott asserts that the trial court erred in denying her bill of review because the evidence she presented at the hearing on her bill of review was sufficient to meet her burden of establishing a prima facie case as required by *Baker*.

In her petition for equitable bill of review, Patty Elliott alleged legal and factual misrepresentations by the Elliott Defendants regarding the agreed divorce, coupled with her alleged mental incompetency at the time the agreements were entered, as extrinsic fraud. Specifically, Patty Elliott alleged that Bryan Elliott misrepresented to her (1) that he was the spouse who had the idea and did most of the work to create B & E Industries, (2) that the community nature of the interest in the business would play no part in its division upon divorce, (3) that Patty Elliott would actually be allowed to work in the business of B & E, and (4) that the employment agreement was a sham. As a result of the alleged fraud, she claimed the property division was grossly disproportionate.

At the pre-trial hearing, Lori Mitchell, a friend and former co-worker at American Airlines, testified regarding episodes of crying and anxiety which Patty Elliott experienced in 1991, as a result of which Mitchell assisted her in being seen and prescribed medication by a psychiatrist. Mitchell also testified to her observations of Patty Elliott during the time she stayed with Mitchell in August and September of 1994, prior to the divorce. Mitchell described Patty Elliott as crying constantly, staying in bed, and not bathing or eating regularly. Mitchell testified that she again tried to assist Patty Elliott in obtaining treatment, and also urged her to hire an attorney.

Mike Peters, a licensed professional counselor, testified he saw Patty Elliott as a client on July 30, 1994. She was tearful and anxious. Patty Elliott talked to him about how she was letting her husband dictate the terms of the divorce. On August 2, 1994, Peters specifically and strongly advised Patty Elliott to consult a lawyer regarding the divorce.

Patty Elliott appeared clean and neatly attired when Peters saw her. She was able to get to his office apparently on her own and handled payments to him. Peters last saw her on October 3 1994. He described her as functioning, and not crazy. It is undisputed that, by November and December 1994, during and after the peri-

od in which the divorce decree was entered, Patty Elliott was living in her own apartment.

Patty Elliott is thirty-five years of age, with a degree from UTA in business administration. She testified that she was "[v]ery upset" when Bryan Elliott announced he had filed suit for divorce. She experienced "non-stop crying" and went without bathing for at least four days. She wore the same tee-shirt and shorts and stayed with her friend, Lori Mitchell, because she was not functioning well.

Patty Elliott testified that Bryan Elliott told her "you have an attorney," when she protested that she was not availing herself of the services of independent counsel. He meant that they were using his attorney, she said, but she admitted that she did not believe that Frank Jelinek was there to protect her interests. Patty Elliott explained that she did not seek independent counsel for several reasons: (1) because she was afraid; (2) Bryan Elliott told her she would wind up with nothing; (3) she was out of town dealing with the American Airlines termination and her grandmother's funeral; and (4) she was confused and crying.

When Bryan Elliott filed for divorce, he and Patty Elliott negotiated the household items between themselves. Patty Elliott also negotiated with him regarding the terms of the employment agreement, obtaining an increase in the period of payments from three to four years. She also successfully negotiated for the car maintenance.

Patty Elliott admitted she signed the divorce documents, but testified she did not understand them. She acknowledged she may have read parts of them but said she didn't understand the "legal jargon." She testified that Bryan Elliott told her B & E "is not yours." In particular, she complained of the division of the stock in B & E, and also complained that, although it was her understanding that, after the divorce, she would be allowed to work at B & E, she was never allowed to do so.

Bryan Elliott testified by deposition that Patty Elliott received the employment agreement in lieu of the stock as an offsetting factor because there was very little money in the marital estate, and because she was more concerned with having a continuing source of income for the period needed to re-establish her life. Regarding her ability to work at B & E, he explained that he was president of B & E and had the option under the employment agreement to assign her duties, but did not do so because their relationship had deteriorated to a point where it would have been destructive to the company to do so.

Frank Jelinek testified that Patty and Bryan Elliott met together in his office on the date that both signed the divorce documents. Jelinek recalled that she may have come to his office to sign the waiver and one other time to negotiate regarding the agreement incident to the divorce. He made it abundantly clear to her that he was not representing her as her attorney. She told him that she was consulting with an attorney and brought notes regarding changes she said that her attorney had requested to a meeting in his office.

In Jelinek's opinion, the division of the interest in B & E was fair in light of other factors, including Bryan Elliott's assumption of the business debts and the payment to Patty Elliott of wages for four years, as well as maintenance, insurance, and payments on her car. Jelinek had prepared the employment agreement for the wage payments. He explained that the employment agreement did not require her to do any work. She was on call, at the discretion of the president of the company. He testified that when Patty Elliott executed the employment agreement, he explained to her that she would receive income but that she would not be required to work unless called upon by the company.

Jelinek testified that he had become counsel for B & E in 1994. In Jelinek's opinion, as corporate counsel for the company at the time of the divorce, Patty

Elliott received more than Bryan Elliott received in the property settlement of the divorce. In his opinion, the settlement was exceptionally fair, more fair to her than what he had told Bryan Elliott she would receive if the property division were contested. The company was struggling in 1994 and was having a hard time keeping clients and customers happy. In 1994, it was a company "in transition."

Documentary evidence introduced by Patty Elliott established that she was treated by a psychiatrist after the divorce in July 1995 when she became despondent upon learning that Bryan Elliott's new wife was pregnant. She was hospitalized in 1996, two years after the divorce, for an overdose of an antidepressant. After that time, she received services through Tarrant County Mental Health and Mental Retardation.

We hold that Patty Elliott failed to carry her burden at the *Baker v. Goldsmith* hearing by presenting no "prima facie" proof of a meritorious defense. Her evidence of emotional or mental instability at times before and after the divorce was relevant only to the element of her lack of fault or negligence. Her evidence of possible misrepresentations and threats by her husband was relevant only to the element of his fraud or wrongful act. Those questions were not before the trial court, and evidence bearing on those issues had no relevance at that hearing. *Beck v. Beck*, 771 S.W.2d 141, 142 (Tex.1989); *Baker*, 582 S.W.2d at 408; *Martin v.. Martin*, 840 S.W.2d 586, 591 (Tex.App.—Tyler 1992, writ denied). The *only relevant inquiry* at the *Baker v. Goldsmith* hearing was whether Patty Elliott presented prima facie proof of a meritorious defense. *Beck*, 771 S.W.2d at 142; *Martin*, 840 S.W.2d at 591.

As previously stated, a meritorious defense is presented when evidence is offered to show that the complainant would be entitled to judgment on retrial if no contrary evidence is offered. *Baker*, 582 S.W.2d at 409. A bill of review complainant may present a meritorious defense by proof that he or she would obtain a modification of the judgment with a more favorable result on retrial. *See, e.g.*, *McDaniel v. Hale*, 893 S.W.2d 652, 666–67 (Tex.App.—Amarillo 1994, writ denied) (holding meritorious defense may include ground for modification of judgment such as excessiveness of damages). A meritorious defense may also include a meritorious claim. *See id.* at 666.

In cases involving bills of review to set aside divorce decrees regarding division of property, courts have held that a meritorious claim is presented by proof that the petitioner "would obtain a more favorable property division on retrial." *See, e.g.*, *Martin*, 840 S.W.2d at 592 (evidence showed company's financial condition was profitable, rather than precarious as represented, and had $6 million in retained earnings unknown to plaintiff at time of divorce); *Kessler v. Kessler*, 693 S.W.2d 522, 526 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (evidence showed husband concealed cash deposit of $8,310.84); *DeCluitt v. DeCluitt*, 613 S.W.2d 777, 780 (Tex.App.—Waco 1981, writ dism'd) (evidence showed community estate was actually worth $409,562 at time of divorce in which mentally and physically ill wife had been induced to accept only $27,000 in money and property).

*Martin* illustrates the type of proof which would suffice to present a prima facie meritorious defense by a complainant such as Patty Elliott. In the divorce decree in that case, Wife received her jewels, a new Cadillac, $44,000 in cash and $3,000 per month for 120 months as contractual alimony. *Martin*, 840 S.W.2d at 589–90. Husband received the remainder of the property, including stock in a business he managed, which he listed as separate property worth approximately $2 million. *Id.* Wife filed a bill of review some two years later, claiming that she had suffered from severe depression during the period of the divorce, that Husband had taken advantage of her condition and threatened to

seek custody of the couple's only child if she pursued discovery, and that he misrepresented that the stock was his separate property and that the company was in a precarious financial condition. *Id.*

At a *Baker v. Goldsmith* hearing, Wife offered evidence discovered by her subsequent to the divorce that the stock was community property, that Husband paid himself a dividend of approximately $2.8 million shortly after the divorce became final, and that there had been $6 million in retained earnings in the company at the time of the divorce. *Id.* Based on this evidence, the court of appeals in *Martin* concluded that the trial court erred in dismissing Wife's bill of review on the ground that, as a matter of law, she did not present prima facie proof of a meritorious claim. *Id.* at 592. The court of appeals held that, by this evidence, Wife "demonstrated that she would obtain a more favorable property division on retrial." *Id.*

That type of proof is absent here, although other circumstances are superficially similar to those in *Martin.* Patty Elliott also contends that she suffered from a weakened emotional or mental state at the time of the divorce and that her husband made threats and misrepresentations regarding the character and value of the business. However, unlike the complainant in *Martin,* Patty Elliott presented no evidence as to the value of B & E or of the stock in B & E at the time of the divorce, nor did she offer any evidence that the actual value of the stock at the time of the divorce was significantly greater than was represented to her. To the contrary, the only evidence was undisputed that B & E in 1994 was a struggling business. Patty Elliott also offered no evidence of the amount of the business debts assumed by Bryan Elliott in the property division. The only evidence in the record is to the effect that the division of shares, in light of other factors, including Bryan Elliott's assumption of the business debts, was fair.

Absent any evidence from which to conclude that a property division would be any more favorable to her on retrial than under the agreed divorce decree, we hold that Appellant failed to present a prima facie meritorious defense, as a matter of law. *See Hartsfield v. Wisdom,* 843 S.W.2d 221, 224 (Tex.App.—Amarillo 1992, writ denied) (holding mere allegation that complainant was mentally incompetent inadequate; complainant "must also plead or show proof that he received an unfair settlement *and would obtain a more favorable property division on retrial* if his allegations were believed." (emphasis added)); *see also Arndt v. Arndt,* 714 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1986, no writ) (holding evidence of disproportionate property division based on values three years after divorce was not prima facie proof of meritorious claim); *Earp v. Earp,* 688 S.W.2d 245, 248 (Tex. App.—Fort Worth 1985, no writ) (holding evidence of disproportionate property division in that husband received 63% of marital estate did not present prima facie proof of meritorious defense).

The agreement incident to divorce contained a provision regarding attorney's fees, specifically providing as follows:

> 6.22 If either party seeks a modification of this Agreement by an equitable Bill of Review and the initiating party fails to succeed in setting aside this Agreement, then the initiating party will be liable to the defending party for any court costs, attorney's fees, consultant's fees, appraisal fees, and any other expenses incurred in defending the action.

Patty Elliott testified at the *Baker v. Goldsmith* hearing that she was aware that she would be contractually liable for Bryan Elliott's attorney's fees if she did not prevail. She does not contend that the amount awarded was not shown to be reasonable or necessary. We hold that the trial court did not err in awarding attorney's fees of $10,000 to Bryan Elliott. We overrule Appellant's second issue.

## 3. Exclusion of Expert Opinions

In light of our holding that Appellant failed to present a "meritorious defense," it is clear that any error of the trial court in excluding opinions and diagnoses of Appellant's healthcare providers was harmless.

At the *Baker v. Goldsmith* hearing, Appellant, under rule 902(10) of the Texas Rules of Evidence, attempted to introduce medical records and affidavits from five medical and mental health providers. Appellees objected to any diagnoses or opinion evidence contained in the medical records on the ground that Appellant had failed to identify these medical/mental health care providers as experts in her answers to interrogatories. The trial court sustained this objection and admitted the medical records except to the extent of any diagnoses or opinion evidence. The trial court also sustained objection to Appellant's attempt to introduce opinions and any diagnosis of Michael Peters during his live testimony.[4] Appellant asserts that the exclusion of this evidence constitutes reversible error.

The record reflects that Appellee propounded certain interrogatories to Appellant, including Interrogatory No. 1 that requested Appellant to identify all experts who will testify. In response to this interrogatory, Appellant identified only Rosendo Rodriguez, Jr., on the subject of attorney's fees. Appellant failed to identify any medical experts or mental health experts in response to Interrogatory No. 1. When

Appellees objected to the expert opinions, Appellant pointed out to the court that she had identified her medical and mental health experts in response to Interrogatory No. 8, which requested the identity of all healthcare providers from whom Appellant had sought or received mental health care during the past ten years. Appellant thus argued to the trial court, and contends in this Court, that Appellees were not prejudiced by her failure to identify the same healthcare providers in her answer to Interrogatory No. 1. Alternatively, she argues that she did not consider a *Baker v. Goldsmith* pretrial hearing to be the trial contemplated in the interrogatory complained of by Appellees, and therefore, she was under no duty to supplement her responses to the interrogatories.[5]

Rule 193.6 of the Texas Rules of Civil Procedure[6] states that a party who fails to respond to a discovery request to name a witness may not offer the testimony of a witness who was not so identified, unless the court finds good cause *or* that the failure to timely make the discovery response will not unfairly surprise or unfairly prejudice the other parties.[7] In light of Appellant's pleadings, which clearly placed her mental health condition in issue and the specific listing of each of the health care providers in response to Interrogatory No. 8, we believe the trial court abused its discretion in excluding the expert opinions of these witnesses under TEX.R. CIV. P. 193.6(a)(2).

4. Appellant made no offer of proof regarding the excluded testimony of Mr. Peters. Therefore, her complaint as to any opinions or diagnosis of Peters is waived. TEX.R. EVID. 103(a)(2).

5. Because we believe that any error of the trial court was harmless, it is unnecessary to reach this alternative ground.

6. Because this case was pending on January 1, 1999, rule 193.6 of the Texas Rules of Civil Procedure is the applicable discovery rule. *See* "Final Approval of Revisions to the Texas Rules of Civil Procedure" ¶ 4(d), Misc. Docket No. 98–9196 (Nov. 9, 1998), 977–78 S.W.2d (Tex.Cases) XXXIII–XXXIV (stating that Rule 193 applies in cases pending on January 1,

1999, but parties are not required to update outstanding discovery responses, objections, or privilege assertions, or amendments or supplementations of discovery responses to comply with the new rule). This rule revised and replaced rule 215(5) of the Texas Rules of Civil Procedure, such revision being effective January 1, 1999.

7. Rule 193.6 provides an alternative to the draconian sanctions of automatic exclusion under rule 215(5)'s lack of "good cause" requirement by including the choice of showing a lack of unfair surprise or unfair prejudice in addition to a showing of a lack of "good cause", thereby reducing the burden of a party who is seeking to introduce a witness.

Error in admission or exclusion of evidence must "have probably caused an improper judgment" in order to be reversible. Tex.R.App. P. 44.1(a). *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 (Tex.1989) (applying harmless error analysis to erroneous admission of evidence subject to automatic exclusion under former rule). In order for improper exclusion of evidence to be reversible, the erroneously excluded evidence must have been controlling on a material issue. *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994). Reversible error does not ordinarily exist for erroneous exclusion or admission of evidence which is not controlling on a material issue dispositive of the case. *Gee,* 765 S.W.2d at 396.

Additionally, where evidence is immaterial to any issue before the court, erroneous exclusion of that evidence is simply not harmful. *See, e.g., Rutledge v. Staner,* 9 S.W.3d 469, 472 (Tex.App.—Tyler 1999, pet. denied) (holding error harmless under Rule 193.6 in excluding evidence where it would not have affected outcome); *C & C Partners v. Sun Expl. & Prod. Co.* 783 S.W.2d 707, 713 (Tex.App.—Dallas 1989, writ denied) (holding error harmless under former Rule 215(5) in excluding evidence immaterial to any issue in case); *Thomas v. Atlanta Lumber Co.,* 360 S.W.2d 445, 448 (Tex.Civ.App.—Texarkana 1962, no writ) (erroneous exclusion of evidence held not reversible where not pertinent to issues before court).

Evidence of expert opinions or as to any diagnosis of Patty Elliott's mental condition was immaterial to the one issue which was before the trial court at the *Baker v.Goldsmith* hearing, which was the issue of whether Appellant could present prima facie evidence of a meritorious defense. *See Beck,* 771 S.W.2d at 142; *Baker,* 582 S.W.2d at 408–09; *Martin,* 840 S.W.2d at 591. We hold that error of the trial court in not admitting such opinion evidence of Patty Elliott's mental condition, which could only have been material on the issues of fraud or wrongful conduct

of Bryan Elliott or her own lack of negligence, was harmless and not reversible. *See Martin,* 840 S.W.2d at 591 (holding issues of fraud of husband and lack of negligence or fault of wife were not before the trial court at *Baker v. Goldsmith* hearing, and evidence bearing on those issues should not be considered). We overrule Appellant's first issue.

## IV. CONCLUSION

Having overruled Appellant's first and second issues, we affirm the judgment of the trial court.