Charles Robert BEESLEY, Appellant,

v.

HYDROCARBON SEPARATION, INC.
and Wilfred Gary McPeak,
Appellees.

No. 05–10–00252–CV.

Court of Appeals of Texas,
Dallas.

Jan. 3, 2012.

David Jefrie Mizgala and Richard M. Hunt, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for Appellant.

Cody L. Towns, Rodriguez Ghrayeb & Gerscg, LLP, Jeffrey S. Tolley, Rodriguez Davis Ghorayeb Gersch · & Towns, P.C.,

Chad M. Ruback, The Ruback Law Firm, Dallas, TX, for Appellees.

Before Justices BRIDGES, MARTIN RICHTER, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Appellant Charles Robert Beesley sued appellees Hydrocarbon Separation, Inc. (HSI) and Wilfred Gary McPeak for breach of contract and fraud. The trial court granted appellees' motions for summary judgment. We affirm the trial court's judgment in part, reverse in part, and remand the cause.

### BACKGROUND

In 1992, HSI purchased all of the shares of Dell Chemical and Marketing Limited (Dell Chemical), a Canadian corporation owned by Beesley. Dell Chemical owned the formula for a product called Value 100 used in cleaning hydrocarbons from oil field equipment. In connection with the purchase, Beesley and HSI entered into two agreements, the Agreement for Sale of Shares, and the Contract for Provision of Services (referred to by Beesley as the Employment Contract), both dated November 20, 1992. Both agreements included provisions by which Beesley would be employed by HSI as a consultant. The Agreement for Sale of Shares provided:

6. By way of a consultancy contract agreement, the Buyer [HSI] agrees to employ the Seller [Beesley] as a consultant for a period of ten years at an annual fee of FIFTY THOUSAND DOLLARS ($50, 000.00) Ca-

nadian per year commencing January 1, 1994.

The Employment Contract provided:

2. PAYMENT

(1) As full consideration for performance hereof, [HSI] will pay Consultant on the basis specified in Schedule "B", "Payment," attached hereto.

Schedule B in its entirety provided: "Consultant shall be paid $50,000 (Fifty Thousand) Canadian in arrears per annum for services rendered." Beesley's services were to commence on January 1, 1994, and "be completed by December 31, 2003." The agreement would terminate on December 31, 2003, unless the parties elected to renew it, but even if renewed, the agreement would terminate on December 31, 2005.

HSI, a Texas corporation, was incorporated after the agreements were signed. The summary judgment evidence shows HSI was incorporated in February 1993. On December 1, 1993, Beesley entered into an agreement entitled "Contract for Provision of Services Addition" (Addition) with a corporation identified as "Hydrocarbon Separation Inc. (HCI) ... a Cyprus, Nicosia corporation" (HCI Cyprus). This Addition permitted HCI Cyprus to pay Beesley $100,000 for the formulas and blending procedures for Value 100. The Addition also provided, "[t]his agreement when exercised by HCI will render null and void any other financial commitments which HCI may have to [Beesley]." Neither party performed under the Addition, and HCI Cyprus is not a party to this lawsuit.[1] In interrogatory responses, HCI stated that "sometime in 1993 or 1994," it transferred its ownership interest in Dell Chemical to an entity called Texas Industries, Ltd. On February 2, 1996, the corporate charter of

---

1. Although Beesley makes no claims under the Addition, he cites it as relevant summary judgment evidence, as discussed in more detail below.

HSI was forfeited for failure to file a franchise tax report.

Although HSI paid the consideration under the Agreement for Sale of Shares, it is undisputed that HSI never made any payments under the agreements to Beesley for consulting services. On December 17, 2003, McPeak sent Beesley a letter terminating the Contract for Provision of Services. On January 13, 2004, Beesley sent an invoice to McPeak and HSI for $500,000 Canadian for his service. Neither HSI nor McPeak paid the invoice, and on December 3, 2007, Beesley sued HSI and McPeak for breach of contract and fraud. The trial court granted summary judgment for HSI and McPeak on all of Beesley's claims. Beesley appeals only the portion of the judgment regarding his claims for breach of contract.

## STANDARDS OF REVIEW

We review summary judgments under well-established standards. *See* Tex.R. Civ. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985) (traditional motions under Rule 166a(c)); *Gen. Mills Rests., Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.) (no-evidence motions under Rule 166a(i)). A defendant who moves for summary judgment pursuant to rule 166a(c) must show the plaintiff has no cause of action. A defendant may meet this burden by disproving at least one essential element of each theory of recovery or by conclusively proving all elements of an affirmative defense. *See Gen. Mills Rests.*, 12 S.W.3d at 832. A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *AN Collision Ctr. of Addison, Inc. v. Town of Addison*, 310 S.W.3d 191, 193 (Tex.App.-Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

We review a no-evidence summary-judgment motion under the same legal sufficiency standard used to review a directed verdict. *See* Tex.R. Civ. P. 166a(i); *Gen. Mills Rests.*, 12 S.W.3d at 832–33. We must determine whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Gen. Mills*, 12 S.W.3d at 833. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). As with traditional motions, we consider the evidence in the light most favorable to the non-movant. *Id.*

## ISSUES

In a single issue, Beesley contends the trial court erred by granting appellees' motions for summary judgment on his claim for breach of contract. Beesley contends the summary judgment evidence demonstrated the existence of genuine issues of material fact on every challenged element of his contract claim and on at

least one element of each affirmative defense asserted by appellees.

### DISCUSSION

The trial court first granted partial summary judgment for McPeak and HSI on their affirmative defense of limitations. In its order, the trial court concluded:

Plaintiff [Beesley] has brought a breach of contract claim against Defendants [McPeak and HSI], alleging that Defendants breached their contract with Plaintiff by failing to make ten annual payments of $50,000 per year in exchange for Plaintiff providing certain consulting services during the period 1994 to 2003. Based on the summary judgment evidence before it, the Court finds that the written contracts between the parties unambiguously require that payment for each calendar year period of service be made during the following calendar year, the first payment thus becoming due in 1995 (for services rendered in 1994) and the final payment becoming due in 2004 (for services rendered in 2003). As Plaintiff did not bring suit until December 3, 2007, claims for all but the final two annual payments (for services allegedly provided in 2002 and 2003) are barred by the statute of limitations.

McPeak then filed a motion for summary judgment contending he was not individually liable on the contracts, and HSI moved for summary judgment based on its

dissolution. The trial court granted these motions, and judgment was entered that Beesley take nothing on his claims. Because these latter motions address Beesley's entire claim, we address them first.

### 1. Dissolution of HSI

HSI moved for summary judgment alleging that Beesley's claims were barred because they were asserted more than three years after HSI was dissolved. Citing article 7.12 of the Texas Business Corporations Act, HSI contended Beesley was required to assert his claims "before the expiration of the three year period following the date of dissolution." *See* TEX. BUS. CORP. ACT ANN. art. 7.12 (expired January 1, 2010).[2] With its motion for summary judgment, HSI submitted a certified copy of a notice of tax forfeiture from the Texas Secretary of State dated February 13, 1996. Former article 7.12(F)(1)(e) provided that a corporation whose charter was forfeited pursuant to the Texas Tax Code was "dissolved" for purposes of article 7.12.

In response, Beesley raised two issues. First, he argued that HSI's judicial admissions precluded summary judgment because they at least raised a fact issue as to HSI's continued corporate existence. Second, he argued that HSI had failed to file a verified denial as required by Rule 93, Texas Rules of Civil Procedure.[3] With respect to the judicial admissions, Beesley pointed to allegations in HSI's "Amended

---

**2.** *See* Act of May 7, 1993, 73rd Leg., ch. 215, § 2.19, 1993 Tex. Gen. Laws 457–58. The Texas Business Corporation Act expired effective January 1, 2010, and was replaced by the Texas Business Organizations Code. *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 2, 2003 Tex. Gen. Laws 595. The prior law, however, "governs the acts, contracts, or transactions of the entity or its managerial officials, owners, or members that occur before the mandatory application date." TEX. BUS. ORG.CODE § 402.006 (West Supp. 2009).

The trial court's orders at issue here were also entered prior to January 1, 2010.

**3.** Beesley does not include this point in his argument on appeal. We note that the April 24, 2009, amended original answer is verified and includes an allegation that "Pursuant to Texas Rule of Civil Procedure 93, Defendant Hydrocarbon Separation, Inc. specifically denies that it has the legal capacity to be sued."

Original Answer and Counterclaim" filed on April 24, 2009. This answer included an allegation by HSI that "HSI is the proper party to sue for breach of contract." HSI also pleaded that it was entitled to recover its costs and attorney's fees. Beesley also pointed to HSI's "Original Counterclaim and Third Party Petition" filed on November 21, 2008. In this pleading, HSI alleged it was a corporation organized under the laws of the State of Texas with its principal place of business in Texas. Beesley argued this was an admission against interest that "may be used as evidence against the pleader," and therefore a genuine issue of material fact was raised precluding summary judgment. On appeal, Beesley argues, "[h]aving variously contended as convenience dictated that it both did and did not exist, and did and did not have the legal capacity to participate in litigation, HSI created a genuine fact issue regarding its legal liability to Beesley."

Beesley, however, filed his own motion for partial summary judgment on HSI's counterclaims. Attaching HSI's articles of incorporation as well as a certified copy of the Secretary of State's Notice of Tax Forfeiture, Beesley argued:

> Under Texas law, a corporation that has forfeited its charter is considered dissolved under Article 7.12 of the Texas Business Corporations Act and has only a three year window in which it can conduct limited kinds of business. *Emmett Properties, Inc. v. Halliburton Energy Services, Inc.*, 167 S.W.3d 365, 369 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). After the end of the three year dissolution period any claim it has not filed against its debtors is extinguished. Neither the corporation nor

its former owners can sue to collect the debt. *Id.* Further, reinstatement of the corporation does not revive the claims—once extinguished they are extinguished forever. *Id.* The corporation itself not only loses the right to sue and defend, it ceases to exist for all purposes. *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128 (Tex.1942). HSI cannot prosecute a counterclaim against Beesley in this case because it does not exist. Therefore, the claims purportedly brought by it must be dismissed.

In its own motion for summary judgment, HSI noted that it had nonsuited its counterclaim after Beesley filed this motion arguing that HSI had ceased to exist.

◼ While Beesley argues that HSI's allegations supporting its counterclaim were judicial admissions that it was in existence, the only summary judgment evidence offered by both Beesley and HSI shows that HSI was dissolved in 1996 pursuant to statute and continued to exist only for the limited purposes set forth in article 7.12. *See McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128 (1942). Under article 7.12, Beesley was required to bring his claims within three years of the dissolution. Because he did not bring suit until 2007, summary judgment for HSI was proper.[4]

## 2. Individual liability of McPeak

Beesley argues that he raised a fact issue concerning whether McPeak is individually liable to him for payments due under the Employment Agreement. Beesley first contends that McPeak is precluded from contesting his liability because he did not file a verified denial as required by Rule 93 of the Texas Rules of Civil Proce-

---

4. Although HSI is dissolved, Rule 29 of the Texas Rules of Civil Procedure provides that *in a suit against a corporation that has dis-*solved, "judgment may be rendered as though the corporation had not been dissolved."

dure. Beesley further relies on section 171.255(a) of the Texas Tax Code and McPeak's liability as a promoter.[5] *See* TEX. TAX CODE ANN. § 171.255(a) (West 2008). We consider these arguments in turn.

Citing *W.O.S. Construction Co. v. Hanyard,* 684 S.W.2d 675, 676 (Tex.1985) (per curiam), Beesley argues that Rule 93 required McPeak to verify "that he was not liable in his individual capacity, the capacity in which he was sued." Beesley also relies on *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494 (Tex.1991), for the proposition that "an unpleaded affirmative defense may not serve as the basis for a summary judgment motion when it is first raised in the summary judgment motion and the opposing party specifically objects to the lack of proper pleading to support the defense."

We think the more applicable rule was stated in *Light v. Wilson,* 663 S.W.2d 813, 814 (Tex.1983). In *Light,* after a non-jury trial on the plaintiffs' suit for damages for failure to construct a house, the trial court held Glen W. Light, sole owner of G–W–L Builders, Inc., jointly and severally liable to the plaintiffs. On appeal, Light contended he was not liable in the individual capacity in which he was sued because he was acting in the capacity of an officer of G–W–L. The appellees argued that Light failed to file a verified denial as required by Rule 93, and could not now raise the defense. *Id.* The appellees also argued that because Light did not file a verified denial, they were not required to plead piercing the corporate veil or alter ego to enable the finding of individual liability against Light. The supreme court disagreed, reasoning:

> The capacity addressed in rule 93(c), TEX.R. CIV. P., is Light's standing to assert or defend the action before the Court. It does not relate to the merits of the cause of action or the merits of the defenses thereto. Light may still challenge the proof of the Wilsons' right to recover in any capacity alleged. *See Conrad v. Artha Garza,* 615 S.W.2d 238 (Tex.Civ.App.-Dallas 1981, no writ). Light's capacity to be sued is not in issue, but the merit of the Wilsons' suit was placed in issue by Light's general denial. *Shell Chemical Company v. Lamb,* 493 S.W.2d 742 (Tex.1973).

*Light,* 663 S.W.2d at 814. Because there were no pleadings or proof to support Light's personal liability, Light could not be held personally liable. *Id.* at 814–15. The portion of the judgment holding Light jointly and severally liable was reversed. *Id.* at 815.

▮▮▮ Here, Beesley's pleading is that "McPeak is liable for HSI's debt to Beesley" for three reasons. Beesley pleaded that McPeak was liable as a promoter, as the alter ego of HSI, and as the officer of a corporation that failed to pay franchise taxes. By denying these allegations, McPeak is not raising an "affirmative defense" of "lack of capacity," but is challenging Beesley's "right to recover in any capacity alleged." *See Light,* 663 S.W.2d at 814. A failure to make a verified denial may obviate the need for a plaintiff to plead and prove a basis for an individual

---

**5.** In his original petition, Beesley also contended McPeak was liable as the alter ego of HSI. McPeak moved for summary judgment on this ground. While Beesley's brief on appeal notes that McPeak sought summary judgment on alter ego liability, Beesley makes no argument and cites no authority on the issue. We therefore need not address this ground.

*See* TEX.R.APP. P. 38.1(i) (appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Bolling v. Farmers Branch Indep. Sch. Dist.,* 315 S.W.3d 893, 896 (Tex.App.-Dallas 2010, no pet.) (appellate brief must articulate issue we are asked to decide).

defendant's liability. *See, e.g., Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 929 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding that individual liability may be found in absence of sworn denial without having to find corporation is alter ego of individual defendant). But where, as here, the basis for the individual's liability is already pleaded, and is the only basis on which Beesley seeks to hold McPeak liable, McPeak may challenge the merits of Beesley's allegations without a verified pleading. *See Light,* 663 S.W.2d at 814; *see also Cissne v. Robertson,* 782 S.W.2d 912, 920 (Tex.App.-Dallas 1989, writ denied) (verified denial not required where defendant did not challenge "capacity" as addressed by Rule 93, but did challenge the plaintiffs' right to recovery).[6]

Next, Beesley argues McPeak is individually liable for the Employment Contract under section 171.255 of the Texas Tax Code. This section provides:

> (a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

TEX. TAX CODE ANN. § 171.255(a) (West 2008). The record reflects that HSI's charter was forfeited on February 2, 1996, for failure to file a franchise tax report. Beesley argues that although the Employment Agreement was entered into on November 20, 1992, the debt was "created or incurred" for purposes of section 171.255(a) when each annual payment was due. Therefore, Beesley argues, McPeak is individually liable for the payments that became due after February 1996.

Beesley relies on our opinion in *Dae Won Choe v. Chancellor, Inc.,* 823 S.W.2d 740 (Tex.App.-Dallas 1992, no writ), to argue that HSI "created or incurred" new debt each year the Contract remained in force, "including those years *after* HSI defaulted on its franchise taxes." In that case, however, we did not determine when the debt was created or incurred for purposes of section 171.255, and we distinguished our opinion in *Rogers v. Adler,* 696 S.W.2d 674 (Tex.App.-Dallas 1985, writ ref'd n.r.e.), on that ground. *See Dae Won Choe,* 823 S.W.2d at 743 ("The issue in *Rogers* was when the debt was created or incurred.").

In both *Rogers* and in *Curry Auto Leasing, Inc. v. Byrd,* 683 S.W.2d 109 (Tex. App.-Dallas 1984, no writ), as here, the issue was when a debt was "created" or "incurred" for purposes of section 171.255. In *Curry,* we concluded that corporate debts arising from failure to adhere to a leasing contract were created or incurred at the time the rental agreement was entered into and not at the time the defaults occurred. *Curry,* 683 S.W.2d at 112. Similarly, in *Rogers,* Rogers entered into a contract with Dycon International Inc. and sued Dycon for damages prior to the forfeit of Dycon's charter. After the forfeit, Rogers was awarded judgment against Dycon. *Rogers,* 696 S.W.2d at 675. Rogers argued that because the judgment was awarded after Dycon's charter was forfeit-

---

**6.** In addition, we have concluded that a verified pleading is not necessary where "the truth of [such matters] appears of record." *InvestIN.com Corp. v. Europa Int'l, Ltd.,* 293 S.W.3d 819, 825 (Tex.App.-Dallas 2009, pet. denied) (quoting TEX.R. CIV. P. 93(2) and *Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 56 (Tex.2003)). Where the summary judgment evidence showed that the corporation, and not the individual, was the contracting party, the "matter of capacity" appeared in the record, and verification of the defendant's answer was not necessary in order to consider the capacity defense on appeal. *Id.*

ed, she should be able to recover from Dycon's officers and directors. She contended that the debt was not created or incurred until judgment, after the forfeit of the charter. *Id.* We concluded that the debt was created or incurred for purposes of section 171.255 prior to forfeiture. *Id.* at 677. We noted that all of Rogers's claims were "essentially claims based on the contract despite the allegations of fraud and breach of fiduciary duty." *Id.* We relied on *Curry* and on *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79 (1946), noting the *Schwab* court's holding that a debt was not created or incurred by the renewal of a contract originally executed before forfeiture. *See Rogers*, 696 S.W.2d at 676.[7]

■ We conclude that HSI's debt to Beesley was created or incurred in 1992 when the Employment Contract was signed, not in 1996 after forfeit of HSI's charter. Therefore, McPeak is not individually liable to Beesley under section 171.255. *See also Williams v. Adams*, 74 S.W.3d 437, 443 n. 2 (Tex.App.-Corpus Christi 2002, pet. denied) (noting that debt was "created or incurred" on the "date of the event or events that gave rise to the debt," citing *Schwab*, 198 S.W.2d at 81, and collecting similar cases).

■ We reach a different conclusion, however, on Beesley's argument that

McPeak is liable as a promoter. The evidence is undisputed that HSI was not incorporated until after McPeak signed the Employment Agreement. When a promoter enters a contract on behalf of an unformed corporation, he is personally liable on the contract unless there is an agreement with the contracting party that the promoter is not liable. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 897 (Tex.App.-Fort Worth 1997, writ denied). Absent such an agreement, a promoter is relieved of personal liability only when the corporation subsequently adopts the contract either expressly or by accepting its benefits. *Id.* at 898. McPeak contends he established as a matter of law that HSI subsequently adopted the Employment Agreement. He relies on his summary judgment affidavit, in which he testified:

> I signed the [Employment Contract] ... on behalf of [HSI].... At the time I signed the Agreements, HSI's corporate formation had not yet been completed, though it was in process. When the process was completed and HSI was officially incorporated on February 22, 1993, HSI adopted and assumed all the obligations, burdens, and benefits under the Agreement, including the obligation to make the annual payments to Beesley (to the extent they ever became due).

---

**7.** Two courts have criticized *Rogers* and *Curry* based on the subsequent enactment of a definition of "debt" for purposes of section 171.255 as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *See Cain v. State*, 882 S.W.2d 515, 517–21 (Tex.App.-Austin 1994, no writ); *Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 867–69 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *see also Lucky Dawg Movers, Inc. v. Wee Haul, Inc.*, No. 05–10–00222–CV, 2011 WL 5009792 at *4 (Tex.App.-Dallas Oct. 21, 2011, no pet. h.) (mem. op.) (noting definition

of "debt" applied in *Taylor* and *Cain*). In both *Cain* and *Taylor*, however, no breach occurred until after forfeiture, so the "debt" in each case could not be "measured in a certain amount of money" at the time of contracting. *See Cain*, 882 S.W.2d at 516 (costs of plugging oil wells); *Taylor*, 316 S.W.3d at 869 (breaches of warranty and failure to provide good title to automobiles). Here, in contrast, the Employment Agreement specified both the amount and the date due, so that at the time of contracting, a "debt" was "created" for purposes of section 171.255.

 Beesley argues that McPeak's statement in his affidavit is conclusory and constitutes no evidence. He relies on Rule 166a(c) of the Texas Rules of Civil Procedure, which provides that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." *See also Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex.1997) (same). As noted in *Trico*, " '[c]ould have been readily controverted' does not mean that the summary judgment evidence could have been easily and conveniently rebutted, but rather indicates that the testimony could have been effectively countered by opposing evidence." *Id.; see also Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 852–53 (Tex.App.-Dallas 2003, no pet.) (concluding that statements in affidavit could have been effectively countered by opposing evidence). Where the opposing party "made no attempt to controvert the affidavit through deposition testimony, interrogatories, or other discovery," an affidavit was competent summary judgment evidence. *Trico*, 949 S.W.2d at 310.

Here, in contrast to the facts in *Trico*, Beesley sought HSI's corporate records in discovery. But HSI was unable to produce any corporate documents reflecting the adoption of the Employment Agreement; in fact, HSI responded to discovery requests for its financial records and corporate records by stating that "no items have been identified—after a diligent search—that are responsive to these requests."

In addition, the summary judgment evidence reveals that a different corporation, HCI Cyprus, entered into an "Addition" to the Employment Agreement, in which it purported to be modifying the obligations under the Employment Agreement, and included the statement: "This agreement when exercised by HCI will render null and void any other financial commitments which HCI may have to consultant." [8] While no action was ever taken under this Addition, it is some evidence that a corporation other than HSI had assumed the benefits and obligations of the Employment Agreement.

McPeak points to Beesley's deposition testimony regarding invoices Beesley prepared, but apparently did not send, for his services rendered under the Employment Agreement. Beesley testified:

Q. Now, you addressed this to Hydrocarbon Separation, Inc.—

A. Uh-huh.

Q. —because you understood that after the sale, Hydrocarbon Separation, Inc. accepted the burdens and the benefits of the contract, correct?

A. Yes.

Beesley, however, would have no personal knowledge of whether or not HSI "accepted the burdens and the benefits of the contract." His "understanding" is not evidence that HSI actually adopted the agreements after McPeak signed them.

In sum, we agree with Beesley that a genuine issue of fact exists whether or not HSI adopted the benefits of the contract or whether McPeak is liable as a promoter. *See Fish*, 948 S.W.2d at 897. The summary judgment record showed that HSI never made any of the annual payments

---

**8.** We do not agree with Beesley's argument that HSI's assignment of its ownership interest in Dell Chemical supports his argument that HSI did not accept the benefits of the agreements. To the contrary, this evidence indicates that HSI acted as the entity with ownership rights to convey. It appears that this evidence was offered primarily to support Beesley's allegations of fraud, which are not asserted in this appeal.

under the contract, and Beesley never provided any of the consulting services enumerated under it, so there is no evidence of performance to indicate acceptance of benefits or obligations. The only evidence in the record that HSI expressly adopted the Employment Agreement or accepted any benefit under it is McPeak's affidavit, which cannot be readily controverted. *See Trico*, 949 S.W.2d at 310. On this record, McPeak's assertion with no supporting facts is insufficient to sustain summary judgment on the issue. Summary judgment was not proper on the issue whether McPeak is liable as a promoter.

### 3. Limitations

 Because we have concluded that a fact issue exists on McPeak's individual liability under the Employment Contract as a promoter, we must address Beesley's contention that the trial court erred in its ruling that Beesley's claims for all but the last two installment payments were barred by limitations. The limitations period for breach of contract claims is four years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (West 2008); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). "Limitations begins to run upon accrual of the cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex.2006). A breach of contract claim accrues when the contract is breached. *Stine*, 80 S.W.3d at 592. When recovery is sought on an obligation payable in installments, the statute of limitations runs

against each installment from the time it becomes due. *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

Beesley contends, however, that different rules govern the Employment Agreement. He relies on *Lichtenstein v. Brooks*, 75 Tex. 196, 12 S.W. 975 (1889), *overruled on other grounds by Dixie Glass Co. v. Pollak*, 162 Tex. 440, 347 S.W.2d 596 (1961), *Davis Apparel v. Gale–Sobel*, 117 S.W.3d 15 (Tex.App.-Eastland 2003, no pet.), *Intermedics, Inc. v. Grady*, 683 S.W.2d 842 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.), and *US MCT, Inc. v. Brodsky*, No. 05–98–00204–CV, 2001 WL 1360301 (Tex.App.-Dallas Nov. 7, 2001, no pet.) (not designated for publication). Beesley argues that under these cases, limitations did not begin to run on his breach of contract claim until demand for payment had been made and refused, or until the expiration of the contract term. He contends that the Employment Agreement is not a contract requiring periodic installment payments,[9] but rather is a "continuing contract" for which limitations did not run until the end of the contract term. We disagree, for two reasons.

First, the cases cited by Beesley do not support his arguments that a continuing contract, and specifically an employment agreement, cannot be governed by the rules for contracts requiring periodic installments. *Lichtenstein* does not address the issue presented here, that is, when

---

9. Beesley argues that the rules for installment contracts have been limited to contracts such as leases and promissory notes, and do not apply to employment contracts. In a recent case, the Fourteenth Court of Appeals agreed with Beesley that an employment agreement cannot be construed as requiring installment payments, but the court did not reach the result Beesley advocates. In *Malallah v. Noble Logistic Services, Inc.*, No. 14–08–01030–CV, 2010 WL 343487 (Tex.Civ.App.-Houston [14th Dist.], Feb. 2, 2010, pet. denied) (mem.

op.), the court held that a cause of action for breach of an employment contract accrues when the employee is terminated, and an employment agreement calling for semimonthly payments did not change this rule and did not create a cause of action for each missed payment. Therefore, the employee could not recover payments in a "trailing period" after the breach when he did not sue within four years of his termination, and his claims were entirely barred by limitations. *Id.*

Beesley's cause of action accrued. Instead, *Lichtenstein* establishes that there is only one cause of action for wrongful termination under an employment contract, which accrues on the date of the breach rather than separately with every subsequently-missed salary payment. *See Lichtenstein*, 12 S.W. at 975 (employee's "right to recover the loss occasioned by the breach ... *arises at once*" [emphasis added]). Although the court in *Lichtenstein* refers to bringing suit "after the expiration of the time that the contract was made for," *id.*, the statement was made in the context of the court's ruling (later rejected in *Pollock*) that the employee could not recover any anticipatory damages that might accrue after the date of trial. *Id.* at 975–76. To maximize the recoverable damages, the employee might wait as long as possible to bring suit. But the court limited its discussion by stating that the employee could bring suit "at any time before the cause of action is barred by the statute of limitations," and its analysis was made in the context of its holding that the cause of action accrued upon breach. *See id.*

In the *Intermedics* case, the parties entered into oral agreement under which Grady was to perform consulting services for Intermedics in return for a $20,000 annual salary and 17,000 shares of Intermedics stock. 683 S.W.2d at 844. Unlike Beesley's claims in this lawsuit, Grady brought a lawsuit only for the promised shares of stock, not to recover his annual salary. *Id.* In response to Intermedics's assertion that limitations barred Grady's claims, the court discussed the law applicable to "continuing contracts," and stated that the limitations period for a continuing contract "does not usually commence until the contract is fully performed." *Id.* at 845. The court discussed these rules as they applied to Grady's claim for the shares of stock, and determined that limi-

tations did not bar the claim. *See id.* at 845–47. In its discussion, the court in *Intermedics* recognized an exception to the "continuing contracts" rule: "However, if the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period, before the contract is completed." *Id.* at 845. Here, the trial court found that the language of the Employment Agreement contemplated periodic payments and determined that limitations began to run on the due date for each payment. This conclusion is consistent with the court's reasoning in *Intermedics*. *See id.*

Beesley also relies on *Intermedics* for the proposition that a demand is required before limitations begins to run. *Intermedics*, however, involved an oral contract where there was no agreement as to when the promised stock would be issued. *See id.* at 845. In *Slusser v. Union Bankers Insurance Co.*, 72 S.W.3d 713, 717–18 (Tex.App.-Eastland 2002, no pet.), the court distinguished *Intermedics* on this ground, concluding that no demand was required where a written contract provided when commissions were to be paid. Beesley contends a demand is required under paragraph 4(1) of the Employment Agreement:

4. Invoicing and Payment

(1) Invoices must be submitted with copies of approved backup documents and such invoice and backup must be submitted by [Beesley] to [HSI] on the dates specified for payment set out in Schedule "B" hereto or as soon as possible thereafter. [HSI] shall be entitled to set off any amount owed by [Beesley] to [HSI] against any amount owing to [Beesley] under this Contract.

Because invoices are required, Beesley argues, no breach of the contract occurred until he submitted his invoice in 2004. We disagree. Paragraph 4(1) clearly states that invoices are due "on the dates specified for payment in Schedule 'B' hereto or as soon as possible thereafter." The time each payment is due is not changed by paragraph 4(1); in fact, paragraph 4(1) appears to contemplate that an invoice may be submitted after payment has been made pursuant to Schedule B.

The other two cases relied on by Beesley do not compel the conclusion that Beesley's cause of action under the Employment Agreement accrued at the end of the contract term rather than at the time each payment was due. In *Davis Apparel,* 117 S.W.3d at 17–19, the court cited the rule for continuing contracts, but limited the plaintiff's recovery to commission payments due within the limitations period, as the trial court did here. *See id.* ("[W]here the terms of an agreement call for fixed, periodic payments, a separate cause of action arises for each missed payment."). In the *Brodsky* case, we noted the rule that under a continuing contract, a party may wait until the end of the contract term to sue. *See Brodsky,* 2001 WL

1360301 at *8.[10] We concluded a fact issue existed as to when the cause of action accrued under the terms of the contract between the parties, which would turn on "when, if ever, Brodsky became a defaulting venturer rather than a noncontributing venturer." *Id.* We did not decide or discuss whether limitations should be determined under the rules for contracts requiring periodic payments. When we were presented with that question in *Spin Doctor Golf, Inc. v. Paymentech, L.P.,* 296 S.W.3d 354, 363 (Tex.App.-Dallas 2009, pet. denied), we concluded that the parties' agreement constituted a continuing contract so that limitations did not run from the date of the initial breach.[11] We did not hold, however, that limitations ran at the end of the contract term, but rather concluded that only payments that became due within the limitations period could be recovered. *Id.* We stated, "a suit for the breach of a contract requiring payment in periodic installments may include all payments due within the four-year statute of limitations period, even if the initial breach was beyond the limitations period," but "[r]ecovery of any payment more than four years overdue is barred." *Id.* at 362.

**10.** The *Brodsky* case, not designated for publication in 2001, has no precedential value. Tex.R.App. P. 47.7(b).

**11.** Interpreting Texas law, the court in *Dell Computer Corp. v. Rodriguez,* 390 F.3d 377, 391–92 (5th Cir.2004), "decline[d] the invitation to be the first court to expand the definition of 'continuing contract' to include … an employment agreement." The court noted that a continuing contract was "an agreement where the contemplated performance and payment are divided into several parts or, where the work is continuous and individible, the payment for work is made in installments as the work is completed," citing *Hubble v. Lone Star Contracting Corp.,* 883 S.W.2d 379, 381 (Tex.App.-Fort Worth 1994, writ denied). The court explained that "[i]n Texas, parties typically enter into continuing contracts for

projects such as construction, during which performance is made in measurable increments and compensated based on the value of work completed in each period, and for which there is a clear end point." *Id.* (citing *Hubble,* 883 S.W.2d at 381–82). The court conceded that not every contract that Texas courts have declared to be "continuing" fits this criteria, but noted that it had found no authority supporting the proposition that an employment compensation agreement, payable at fixed intervals, should be treated as a continuing contract. *Id.* But as in *Malallah,* the result of the court's reasoning was that the plaintiff's cause of action was barred by limitations, not that it had not yet accrued. *See id.; see also Malallah,* 2010 WL 343487 at *3.

We reject Beesley's arguments that his cause of action did not accrue until the end of the contract term for a second reason. Here, the language of both contracts supports the trial court's interpretation that HSI's obligation to pay Beesley arose each year. The Employment Agreement states that Beesley will be paid $50,000 Canadian "in arrears per annum," while the Agreement for Sale of Shares provides that Beesley will receive "an annual fee" of $50,000 Canadian "per year." Neither agreement supports Beesley's contention that a single lump-sum payment of $500,000 was due at the end of the contract term after he submitted an invoice. The trial court's ruling that the agreements "unambiguously require that payment for each calendar year period of service be made during the following calendar year, the first payment thus becoming due in 1995 (for services rendered in 1994) and the final payment becoming due in 2004 (for services rendered in 2003)" is supported by the agreements' express language. We agree with the trial court that because Beesley did not bring suit until December 3, 2007, "claims for all but the final two annual payments (for services allegedly provided in 2002 and 2003) are barred by the statute of limitations."

### CONCLUSION

Because Beesley raised a genuine issue of material fact whether McPeak is liable as a promoter, we reverse the summary judgment in part and remand the cause for further proceedings. We affirm the trial court's judgment in all other respects.