In the Matter of the MARRIAGE OF Latetia Mae STROUD and Martin Hugh Stroud.

No. 05–10–00982–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 2012.

Brad M. Lamorgese, McCurley, Orsinger, McCurley, Nelson & Downing, Dallas, TX, for Appellant.

Richard Robertson, Koons Fuller, Southlake, TX, Rebecca Ann Tillery, Koons Fuller, P.C., Dallas, TX, for Appellee.

Before Justices MOSELEY, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Latetia (Tetia) Mae Stroud filed a petition for bill of review to set aside the property settlement reached with her ex-husband, Martin Hugh Stroud, and approved in the parties' divorce decree. She alleged Martin's threats of financial ruin and concealment of information prevented her from discovering the value and extent of the parties' assets, resulting in an unfair property division in favor of Martin. The trial court granted Martin's summary-judgment motion, and Tetia appealed. In three issues, Tetia contends the trial court erred in granting summary judgment for Martin because fact issues exist regarding the extrinsic fraud element of her bill of review and Martin's affirmative defenses of estoppel and laches. We reverse and remand.

## BACKGROUND

Tetia and Martin were married for twenty-three years before Tetia filed for divorce in 2006. Within a month of the filing, the parties negotiated a settlement agreement, which they signed on June 5, 2006. The settlement was approved by the trial court and incorporated into the final divorce decree dated August 15, 2006. Under the terms of the divorce decree, Tetia, a stay-at-home mother during the marriage, was awarded no spousal maintenance; rather, she received $50,000 in cash and an additional $450,000 to be paid by Martin in five installments from 2007 until 2012. Tetia also received, among other things, the physical assets in her possession or in her name and an employment contract with Chamberlin Roofing and Waterproofing Ltd., the company owned by Martin, providing her with an annual salary of $40,000 plus benefits for a period of three years. Martin was awarded the family home, the assets in his possession

or in his name, and "[a]ll partnership and business ownership, separate and community in nature," including "all rights and privileges, past, present, or future, arising out of or in connection with the operation of the businesses." Martin also received the rest of the community and separate property, "including, but not limited to, money, investments, and business interests not specifically awarded to [Tetia]." Martin was responsible for all expenses associated with their children.

On the same day they signed the settlement agreement, Tetia and Martin signed two documents, which were attached to and memorialized in the divorce decree. The first document was a "Waiver of Disclosure of Financial Information" in which the parties stated they each had been provided a fair and reasonable disclosure of the property and financial obligations of the other and that they expressly waived "any further disclosures of the property, including its value," as well as the financial obligations of the other beyond the disclosures provided in the settlement agreement. They also acknowledged an opportunity to investigate the property and financial obligations of the other and waived "the opportunity for further investigation." The second document was an "Instruction Not to Investigate Assets and Liabilities and Waiver of Disclosure of Financial Information" in which the parties instructed their attorneys, against legal advice, "to pursue the finalization of this case without performing formal or informal discovery." They also gave up their rights to receive "certain information regarding assets and liabilities" from each other and the opportunity to make claims against assets they may have learned about during the discovery process.

Some time after the divorce became final, Tetia learned about the financial success of the business awarded to Martin.

She claimed a "light turned on in [her] head," and she believed Martin had used threats and intimidation to "cheat" her in the divorce. In July 2008, she hired accountant Robert Bailes to review financial information for Chamberlin Roofing and determine the value of Martin's business interests. She also filed a petition to take the pre-suit deposition of Martin, which was granted by the trial court. Pursuant to a protective order, the trial court limited the scope of the deposition to "issues related to extrinsic fraud." Martin also was ordered to produce certain documents, such as tax returns and financial statements, related to his business ownership.

Through his review of Chamberlin Roofing's financial information, Bailes discovered Martin owned a fifty percent share of the company and that the partners made distributions to three affiliated partnerships. Martin testified at his May 2009 deposition that the affiliated entities were separate businesses formed during the marriage. Martin also testified to another company in which he had an ownership interest. Bailes did not see any financial information for the affiliated partnerships because the information was redacted from the documents produced by Martin. Bailes estimated that based on the documents he reviewed, the combined market value of the entities was nearly seven million dollars. This figure did not include other entities Bailes discovered were owned by Martin at the time of the divorce; Bailes stated these entities appeared to have substantial value. None of these entities were specifically identified in the divorce decree, and according to Bailes, the entities were awarded to Martin generally without having their values assessed.

Tetia filed this bill-of-review proceeding in October 2009 seeking to set aside the parties' property settlement agreement as

well as that portion of the divorce decree that incorporates the settlement. Tetia alleged the property division contained in the settlement agreement was so "grossly disproportionate" in Martin's favor and this "absurdly disproportionate split" was "exactly what [she] was deceived and threatened into accepting." Tetia alleged and verified by affidavit that Martin exhibited controlling and menacing behavior during their marriage and would intimidate her with the promise of financial ruin. She specifically stated that when they began discussing the possibility of divorce, Martin threatened that if she "attempted to assert a community property claim against the ownership interests in the companies the parties acquired during marriage, he would close down the business and start up a new one." She also claimed Martin told her that she had signed a document ceding her ownership rights in the companies and that the document provided that if she attempted to assert those rights or discover any documents about the companies, "she would be penalized by receiving only a single dollar in the divorce settlement." Martin also represented there was no need to conduct extensive discovery or hire financial experts to finalize the settlement. Tetia alleged Martin made these misrepresentations with the intent to force her to acquiesce and because she was worried he would follow through on his threats, she accepted a settlement she would not have otherwise agreed to had she known the truth.

Martin generally denied Tetia's allegations and moved for sanctions, arguing the petition was frivolous and meant to harass him. He later amended his answer and asserted the affirmative defenses of estoppel and laches. He also moved for summary judgment, asserting that he had disproved any external fraud and had conclusively proved his affirmative defenses of laches and estoppel.

Martin's summary-judgment evidence included his affidavit, the couple's tax returns from the prior year that were signed after the divorce, some handwritten notes Tetia made during a meeting with her attorney, the transcript from the prove-up of their divorce settlement, and the divorce papers. Martin stated in his affidavit that Tetia "knew exactly what [their] financial situation was." He claimed she had access to their personal finance information because she paid the bills and wrote checks from their joint checking account. He also stated she had access to "all of the information she could possibly need" because the home safe contained copies of the partnership and buy-sell agreements for entities in which he was a partner and she signed their joint tax returns each year. He also highlighted the various documents Tetia signed during the divorce in which she acknowledged that Martin provided a fair and reasonable disclosure of the property, she was offered but declined the opportunity to further investigate, she did not want to perform discovery, and she instructed her attorney not to investigate the assets or perform discovery.[1]

Tetia responded with her own affidavit, stating that she never knew much about Martin's business deals, her understanding of their finances was limited to what Martin told her, and she did not know about

---

1. Martin further attested that during the divorce process, he "never withheld any information" from Tetia or her attorney but that they "never formally requested any documents or information" from him. He said that the notes Tetia took during a meeting with her divorce attorney showed that Tetia and her attorney discussed issues like piercing the corporate veil and the difference between a collaborative divorce and litigation. He claimed he was not controlling, he never threatened or intimidated her in any way, and that she seemed "very happy" with the settlement.

the multiple companies in which he had ownership interests or the extent of their income. She also verified that she had access only to their personal checking account; she did not have access or balance any accounts that did not bear her name. Martin's deposition testimony also confirmed that Tetia did not write checks from his business account. She said she was "not allowed to open mail addressed only to [Martin]," which included the statements regarding their retirement, investment, and bank accounts. During the divorce, she said she repeatedly asked Martin "about investments, retirement or anything specific" and that Martin "refused to give [her] any details." When she told him she thought they should go forward with the divorce at the end of the children's school year, she said "Martin became very angry" and told her she "had better not even try to touch the company." She added: "Martin said he would close the business and simply start a new company if I tried to take part of it." He told her that she "had signed an agreement that said if [she] tried to touch the company[, she] would receive only one dollar in the divorce settlement." Tetia said that because of these threats she had no choice but to go through with the settlement and instructed her attorney not to perform discovery on the value of the business interests. No other professional was hired to value the assets of the estate. Martin wrote the settlement proposal from which the attorneys drafted the paperwork, and she accepted the settlement because she was scared that if she did not, she "would come away with nothing."

Martin testified in his deposition, which was part of the summary-judgment record, that he did not recall telling Tetia anything related to the property division, whether she asked for any document to review before the settlement was finalized or giving her any document, whether she asked about the value of his business interests, or even whether he asked his attorney to prepare the waiver. He said the waiver was part of the settlement. He agreed there were no values associated with assets he was to receive in the property division but claimed Tetia knew the values. He denied threatening to close the business but could not remember exactly what he told her about the businesses; he testified he was sure he was frustrated.

The trial court granted Martin's summary-judgment motion without specifying the basis. Tetia appeals that order.

## LEGAL STANDARDS & APPLICABLE LAW

We review the trial court's summary judgment de novo. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex.2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.-Dallas 2012, no pet.). When we review a traditional summary judgment granted in favor of the defendant, we determine whether he conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of his affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Beesley*, 358 S.W.3d at 418. The movant has the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the

non-movant. *Id.* When the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003); *see also McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

■■■ A bill of review is an independent equitable action brought by a party from a previous suit seeking to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Caldwell v. Barnes,* 154 S.W.3d 93, 96 (Tex.2004) (per curiam); *see also* Tex.R. Civ. P. 329b(f) (on expiration of time within which trial court has plenary power, "a judgment cannot be set aside by the trial court except by bill of review for sufficient cause"). Generally, a party petitioning for a bill of review must plead and prove: (1) that she has a meritorious defense to the underlying cause of action, (2) which she was prevented from making by fraud, accident, or other wrongful act of the opposing party or official mistake, (3) and which was unmixed with any fault or negligence of her own. *Caldwell,* 154 S.W.3d at 96; *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751–52 (Tex.2003). Although a bill of review is equitable in nature and designed to prevent manifest injustice, it takes more than the fact that an injustice may have occurred to justify relief by bill of review. *Wembley Inv. Co. v. Herrera,* 11 S.W.3d 924, 927 (Tex.1999) (per curiam). A showing that the former judgment was obtained by fraud, however, will justify a bill of review to set aside the judgment. *Montgomery v. Kennedy,* 669 S.W.2d 309, 312 (Tex.1984); *Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996, 1001 (1950).

■■■ Only extrinsic fraud, as opposed to intrinsic fraud, entitles a petitioner to bill-of-review relief. *King Ranch,* 118 S.W.3d at 752. Extrinsic fraud is "fraud which denies a losing litigant the opportunity to fully litigate his rights or defenses" at trial. *Montgomery,* 669 S.W.2d at 312. It is conduct that occurs outside an adversarial proceeding that affects how the judgment is procured or prevents a real trial on the issues involved. *See id.* at 313; *Alexander,* 226 S.W.2d at 1002; *see also Browning v. Prostok,* 165 S.W.3d 336, 347 (Tex.2005) (fiduciary's concealment of material facts to induce agreed or uncontested judgment, which prevents party from presenting his legal rights at trial, is extrinsic fraud); *Rathmell v. Morrison,* 732 S.W.2d 6, 14 (Tex.App.-Houston [14th Dist.] 1987, no writ). Extrinsic fraud is considered to be collateral in nature because it involves something that was not actually or potentially in issue in the trial. *Montgomery,* 669 S.W.2d at 312. Intrinsic fraud, on the other hand, "relates to the merits of the issues which were presented and presumably were or should have been settled in the former action." *Tice v. City of Pasadena,* 767 S.W.2d 700, 702 (Tex. 1989). Intrinsic fraud includes fraudulent instruments, perjured testimony, or any other matter presented to and considered by the trial court in rendering judgment. *Browning,* 165 S.W.3d at 348 (citing *Tice,* 767 S.W.2d at 702).

## DISCUSSION

■■■ We must determine at the outset what summary-judgment grounds were before the trial court. The parties agree that because the trial court did not specify the basis for its ruling, we must affirm the summary judgment if any of the grounds presented to the trial court and preserved

for appellate review are meritorious. *Knott*, 128 S.W.3d at 216. They disagree, however, on what grounds were presented in Martin's motion. Tetia asserts the only grounds actually raised by Martin were the extrinsic fraud element and his two affirmative defenses of estoppel and laches, which correspond to her appellate issues. Martin contends he raised and negated "all three required bill of review elements" in his motion but that he "chose to focus his argument and analysis section on the strongest element" of extrinsic fraud. He claims he then "utilized his Reply Brief to more fully argue the elements of meritorious defense and due diligence"—the other two elements. He argues on appeal that we may review the evidence proving he negated all three elements.

Martin moved for summary judgment claiming that "the summary judgment evidence disproves that there was any external fraud, a necessary element that [Tetia] must prove to prevail on her bill of review claim." He claimed entitlement to summary judgment alternatively based on his affirmative defenses of estoppel and laches. He argued as to the bill of review only that he had conclusively disproven extrinsic fraud. He did not address the elements of a meritorious defense and diligence.

█ In our review, we may address only those grounds expressly presented in the motion for summary judgment. *See McConnell*, 858 S.W.2d at 341; *see also* TEX.R. CIV. P. 166a(c) (defendant moving for summary judgment must state specific grounds for relief). "The term 'grounds' means the reasons that entitle the movant to summary judgment, in other words, 'why' the movant should be granted summary judgment." *Garza v. CTX Mortg. Co.*, 285 S.W.3d 919, 923 (Tex.App.-Dallas 2009, no pet.). While Martin recited the

law related to the meritorious defense and due diligence elements (each element received a paragraph), he did not explain "why" he was entitled to summary judgment on those elements. *See id.* And his contentions raised in his reply brief are insufficient to comport with the requirements of rule 166a(c). *See McConnell*, 858 S.W.2d at 341; *Guest v. Cochran*, 993 S.W.2d 397, 402 (Tex.App.-Houston [14th Dist.] 1999, no pet.). We therefore will not address the elements of meritorious defense and due diligence in determining whether the trial court erred in granting Martin's motion for summary judgment. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 886 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) (op. on reh'g).

### Extrinsic Fraud

█ Tetia contends in her first issue that summary judgment was improper because she raised a fact issue on the extrinsic fraud element of her bill of review. She argues Martin's fraud and pressure "vitiated every document signed in connection with the divorce" and that his threats prevented her from discovering the extent and value of their assets so she could make a claim to a fair share of the community estate. She asserts this type of fraud is extrinsic fraud, the existence of which is a question for the trier of fact. Martin responds that even if he concedes Tetia's fraud claims, the fraud she alleged is intrinsic—not extrinsic—fraud, which cannot support a bill of review. He argues the summary-judgment evidence "showed without a doubt that Tetia was abundantly aware of the financial aspects of the community estate."

Tetia relies on *Rathmell v. Morrison* to support her contention that the fraud she

raises is extrinsic fraud. 732 S.W.2d at 14. In *Rathmell,* the wife filed a bill of review, alleging her former husband had misrepresented the value of several closely held corporations they owned during the marriage and by certain threats, coerced her into signing a property settlement agreement. *Id.* at 9. The evidence showed that during the divorce proceedings, the wife's attorney made numerous recommendations that she get an appraisal of the companies. *Id.* at 16. Additionally, the wife testified her husband "absolutely refused to permit an independent appraisal of the companies" and he threatened to dissolve the companies and start new ones if she had the companies appraised. *Id.* She also testified she knew from living with her husband for twenty years that he meant business. *Id.* at 14. She therefore proceeded with the property settlement on her husband's terms. *Id.* at 16.

The husband argued that because he had a "legal right" to close the businesses, his threats would not constitute proof that the wife was induced to approve the property settlement by duress or coercion to support a bill of review. *Id.* at 14. The court of appeals disagreed and said the husband did not have a legal right to prevent the wife from having the companies appraised or threaten to destroy the companies' values if she so insisted. *Id.* Rather, "it was a wrongful act that, coupled with misrepresentation of the value of the companies, amounts to more than intrinsic fraud." *Id.* The court reasoned that if the wife was induced by the husband's threats to forego an appraisal and agreed to accept the property settlement based on his representations, she was "prevented from having a fair opportunity of presenting in the divorce trial evidence concerning the value of the companies." *Id.* The court determined the evidence was sufficient to support a jury finding on the element of extrinsic fraud. *Id.*

Martin asserts that *Rathmell* is factually distinguishable because Tetia has no evidence that he grossly misrepresented the value of the community assets or that he refused an appraisal. He maintains Tetia never requested an appraisal despite having "every opportunity to discover the values of the properties," she had "complete and total access to every relevant piece of information," and she signed documents in connection with the divorce in which she swore she knew the value of the marital property and did not wish to pursue formal discovery. He argues that because she had such access to the underlying financial information and knew the value of the assets, the fraud alleged is intrinsic in nature. He relies on the cases of *Williamson v. Williamson,* 986 S.W.2d 379 (Tex. App.-El Paso 1999, no pet.), *Kennell v. Kennell,* 743 S.W.2d 299 (Tex.App.-Houston [14th Dist.] 1987, no writ), and *Sanchez v. Sanchez,* No. 04–09–00477–CV, 2010 WL 3249905 (Tex.App.-San Antonio Aug. 18, 2010, no pet.) (mem. op. on reh'g).

Martin's reliance on these cases ignores Tetia's evidence. Specifically, she states in her affidavit that Martin threatened to dissolve the company, rendering it worthless, and that she would receive just one dollar in the divorce based on a document he said she signed ceding any interest if she "tried to touch the company." She said she knew he "would do as he threatened because he always did what he said he would do" and that because of these threats, she instructed her attorney not to perform discovery or assess the value of the companies. Further, unlike the bill-of-review petitioners in *Williamson, Kennell,* and *Sanchez,* Tetia averred that she asked for information about their investments but Martin refused to provide any details. She also presented evidence that her only knowledge of their finances was based on their personal checking account; she did

not have access to accounts in Martin's name or the business accounts. She also did not know much about Martin's business deals.

■ Our job in reviewing a traditional summary judgment is not to weigh the ultimate merits of the case, but to determine whether the evidence presents any issue of material fact for the trier of fact to resolve. Tetia's summary-judgment evidence is substantively indistinguishable from that presented in *Rathmell.* *See Rathmell,* 732 S.W.2d at 14; *see also De-Cluitt v. DeCluitt,* 613 S.W.2d 777, 781 (Tex.Civ.App.-Waco 1981, writ dism'd) (concluding opposing evidence created a fact issue as to whether had meritorious defense to property division which she was prevented from making due to fraud or other wrongful acts of husband); *Dudley v. Lawler,* 468 S.W.2d 160, 163 (Tex.Civ. App.-Waco 1971, no writ) (husband's representations as to nature and extent of community estate, if false, are treated as species of extrinsic fraud, justifying modification of property settlement). Specifically, she presented evidence she was faced with threats to render the business worthless; she believed she could not litigate her interest in the community estate without putting her future at risk and was thus prevented by Martin's conduct from asserting her rights to a fair share of the marital property. *Rathmell,* 732 S.W.2d at 14, 16. This evidence is sufficient to raise a material fact issue as to extrinsic fraud, and we sustain Tetia's first issue.

### Estoppel

■ In her second issue, Tetia contends Martin failed to prove his estoppel defense and that, alternatively, fact issues preclude summary judgment. Martin asserts two types of estoppel—judicial estoppel and quasi-estoppel. The doctrine of judicial estoppel "precludes a party from adopting a position inconsistent with one that is maintained successfully in an earlier proceeding." *Pleasant Glade Assembly of God v. Schubert,* 264 S.W.3d 1, 6 (Tex. 2008). Its essential function "is to prevent the use of intentional self-contradiction as a means of obtaining an unfair advantage." *Id.* The doctrine applies only if, among other things, the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress. *Galley v. Apollo Assoc. Servs., Ltd.,* 177 S.W.3d 523, 528–29 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Martin's second type of estoppel, quasi-estoppel, applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced. *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.,* 349 S.W.3d 258, 268 (Tex. App.-Dallas 2011, pet. denied). Arguing quasi-estoppel bars Tetia's claims in her bill of review, Martin specifically relies on Tetia's acceptance of the terms of the property division. "Acceptance of the benefits" is a species of quasi-estoppel that precludes contradictory positions. *Id.*

Martin argues he conclusively proved his estoppel and quasi-estoppel defenses because it is "undisputed that Tetia testified under oath she believed the divorce decree and its incorporated settlement agreement was 'fair and equitable to both [her] and [Martin].' " He also asserts that these stated beliefs of fairness were reinforced in the multiple documents Tetia signed indicating her approval and acceptance of the terms of the property division. In his words, she should "be held to the agreed divorce decree she signed."

As noted, the doctrine of estoppel does not apply if Tetia's prior inconsistent statement was due to mistake, fraud, or duress. *Galley,* 177 S.W.3d at 528–29. Similarly, Tetia's acceptance of the benefits of the terms of divorce settlement do not pre-

clude her, as a matter of law, from a review of the property disposition if she was led into the agreement by Martin's fraud and threats and through no fault or negligence of her own. *Martin v. Martin,* 840 S.W.2d 586, 593 (Tex.App.-Tyler 1992, writ denied). The same evidence that created a fact issue as to Martin's extrinsic fraud precludes a finding that Martin conclusively proved his affirmative defense of estoppel, whether couched in terms of judicial or quasi-estoppel. Specifically, Tetia's summary-judgment evidence that her approval and acceptance of the terms of the settlement were the product of Martin's threats and misrepresentations creates fact issues as to the validity of her acceptance of benefits and representations in the documents she signed. *See, e.g., Martin,* 840 S.W.2d at 593 (proof petitioner was led into agreement by husband's fraud and threats did not bar review even though she accepted community property division); *DeCluitt,* 613 S.W.2d at 781 (petitioner's affidavit created fact issue on whether she accepted the benefits due to financial need and duress and existence of laches on her part); *see also Montgomery,* 669 S.W.2d at 314 (summary judgment record does not establish petitioner accepted the benefits with knowledge of fraud). Tetia testified that because of Martin's threats she thought she had no choice but to go through with the settlement and instructed her attorney not to perform discovery on the value of the business interests. We sustain Tetia's second issue.

### Laches

Like her second issue, Tetia contends in her third issue that Martin failed to prove his defense of laches and that, alternatively, fact issues exist because of his threats. A party asserting a defense of laches must show both an unreasonable delay and harm resulting from the delay. *Caldwell v. Barnes,* 975 S.W.2d

535, 538 (Tex.1998). "Generally, in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitations statute." *Id.* (noting four-year statute of limitations applies to bills of review). Laches should not bar an action within the limitations period unless allowing the action " 'would work a grave injustice.' " *Id.* (quoting *Culver v. Pickens,* 142 Tex. 87, 176 S.W.2d 167, 170 (1943)). Laches is generally a question of fact that is determined by considering all of the circumstances in a particular case. *See In re Mabray,* 355 S.W.3d 16, 23 (Tex. App.-Houston [1st Dist.] 2010, orig. proceeding).

Martin does not explain the legal basis for his laches defense or address it separately from his estoppel arguments regarding Tetia's execution of divorce-related documents and acceptance of benefits. To the extent he relies on his estoppel evidence and arguments to support his laches defense, we decide against him based on our resolution of issue two. We observe further that the bill of review proceeding was filed within the statute of limitations. For the reasons described above as to the existence of fact issues regarding extrinsic fraud, we cannot conclude Martin met his burden of proving laches as a matter of law. *See DeCluitt,* 613 S.W.2d at 781 (fact issues on whether wife accepted benefits due to financial need and duress precluded summary judgment on husband's laches defense). We sustain Tetia's third issue.

### CONCLUSION

The summary-judgment evidence creates facts issues as to whether Tetia's approval and acceptance of the divorce terms were the product of Martin's alleged ex-

trinsic fraud. Based on that same evidence, Martin has failed to prove his affirmative defenses of estoppel and laches as a matter of law. Accordingly, we reverse the trial court's order granting summary judgment in favor of Martin and remand this case for further proceedings.