In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00242-CV
_____

IN THE ESTATE OF MARTIN VAN CURTIS JR.

On Appeal from the 1A District Court
Jasper County, Texas
Trial Cause No. 31975

MEMORANDUM OPINION

The trial court signed a final order denying a bill of review on January 10, 2014. The appellant, Jewel Agness Curtis (Jewel), filed an appeal. We affirm.

UNDERLYING FACTS

Jewel was married to Martin Van Curtis Jr. (Martin) from 1966 until 2010. On August 10, 2010, the trial court signed a judgment that awarded Martin a default judgment and divorce. Martin died in 2011. According to Jewel's appellate brief, Jewel and Martin's son sought to probate Martin's will that Martin executed in 1999. Jewel alleges that Mary Ann Williams (Williams), "a woman who had a relationship with Martin Van Curtis, Jr. of an undetermined nature prior to his

1

death," also filed an application to probate a will executed in 2008, wherein Martin names Williams as his heir. On appeal, Jewel contends that both wills are contested by the opposing parties and the probate suit pertaining to Martin's estate is still pending and awaiting a jury trial.

On November 23, 2011, after Martin's death, Jewel filed a Petition for Bill of Review seeking to have the trial court set aside the default judgment and divorce decree between Martin and Jewel. In Jewel's Petition for Bill of Review, she alleged (1) that she had a meritorious defense that the property division set out in the final divorce decree was "grossly unequal" and "not a just and right division[;]" (2) that she was unable to make this defense because Martin misled her into believing he was not divorcing her, secretly obtained a default judgment, and prevented her from receiving the notice of the entry of the final divorce decree by locking the mailbox and intercepting and hiding the notice; and (3) that her failure to present this defense was not due to any intentional act of fault or result of negligence.

The Petition for Bill of Review was consolidated into the probate action. According to Jewel's appellate brief, "[i]f the default divorce and [2008] will are allowed to control, Appellant is faced with losing her one half community property interest in all of the parties' community assets awarded to Decedent, and the loss of

2

her right to continue living in the marital residence home at 1495 S. Bowie, Jasper, Texas, as such home was decreed to be the separate property of Decedent in the final [divorce] decree."

The trial court held a Bill of Review proceeding on the Petition for Bill of Review. At the time of the Bill of Review proceeding, the case had been consolidated with two probate applications. According to the reporter's record, at the time of the Bill of Review proceeding, Jewel's son [Rodney Paul Curtis] had been appointed the "temporary administrator of the estate," and he appeared at the hearing. Jewel also appeared at the hearing along with her attorney, and Williams appeared with an attorney.

Jewel testified at the Bill of Review hearing that she and Martin lived together from the date of their marriage until Martin moved into an assisted living facility shortly before his death in 2011. According to Jewel, at the time Martin hired an attorney to represent him in the divorce, Jewel and Martin lived at the home located at 1495 South Bowie, Jasper, Texas, and their house was built on land Martin had inherited. Jewel testified that Martin also had inherited another tract of land on South Main Street with a FEMA trailer located on that tract, and Martin was "in and out" of the FEMA trailer prior to his death. She also testified

3

that Martin had inherited some property in the Rock Hill community which she stated is south of Jasper.

Jewel explained that she was surprised when she was served with the petition for divorce on January 23, 2010, and she agreed that she had been personally served with the divorce petition. Jewel testified that she and Martin continued to live together, although in separate bedrooms, even after the divorce petition was filed.

At the hearing, Jewel attempted to testify about what Martin told her or represented to her about the divorce. Williams' attorney objected to Jewel's testimony about what Martin told Jewel or what he represented to her, arguing the testimony was hearsay and barred by the Dead Man's Statute. *See* Tex. R. Evid. 601(b). Jewel's attorney argued that there was "no way for my client to prove the fraudulent statements and fraudulent acts which prohibited her from, you know, filing an answer in this case because, Your Honor, the evidence is going to show he told her he was dismissing the suit." The trial court sustained the objections. The trial court also entered a conclusion of law that "[e]vidence concerning conversations between Martin V. Curtis, Jr. and Jewel Curtis were inadmissible under the Texas Rules of Evidence 601(b)." Jewel's attorney asked to make a bill regarding the excluded testimony and Jewel testified that based upon what Martin

4

told her she did not believe he was going to go through with the divorce because she and Martin talked about the situation, and he told her "he was not going to go through with the divorce." She stated she believed, based on her conversation with Martin, that they would not get a divorce and that she did not need to hire an attorney to represent her. According to Jewel, Martin never again mentioned proceeding with the divorce.

Jewel admitted during her testimony that she was a teacher and she had attended college. She acknowledged that she had read the citation attached to the divorce petition that advised her that a default judgment would be taken against her if she did not file a written answer on or before twenty days after the expiration of the date of service. Jewel claimed she really did not understand that a default judgment could be taken against her. She admitted that she had the opportunity to seek out an attorney to advise her concerning the papers, but she chose not to hire an attorney to represent her.

Jewel testified that she was not aware of the default judgment hearing held on April 16, 2010, and she was not aware that Martin intended to proceed with the divorce at the time of that hearing. Jewel denied the allegation in the petition for divorce that she and Martin ceased living together in 2003. According to Jewel, she was unaware that the judge had signed the divorce decree on August 10, 2010, and

5

she testified that on the date of the entry of the divorce she and Martin were living together at 1495 South Bowie as husband and wife, and they shared income and assets.

Jewel explained that on August 10, 2010, there was a mailbox at 1495 South Bowie, Jasper, Texas, which was the address listed on the Certificate of Last Known Address for the postcard notification of the final decree of divorce. Jewel stated that she did not have access to the mailbox because Martin "had the key and he kept it." She testified that the lock had been on the mailbox for "[a]t least a year or longer[,]" and that, although she would get her mail there, she had to wait until Martin retrieved the mail and she had never attempted to remove the lock. Jewel testified that she was never provided with a postcard notifying her that the final decree of divorce had been entered. According to Jewel, it was probably in 2011, when Martin moved out and when he moved into the FEMA trailer. Jewel explained that, at some point after the final divorce was granted, Martin arrived at their house with a copy of the divorce decree and with the police to get his personal belongings out of their house.

Jewel admitted that after the final divorce decree had been entered she spoke with a lawyer about the divorce decree, but she did not hire the lawyer. According to Jewel, the attorney she met with told her that it was too late to do anything about

the divorce. Jewel testified that she did not believe the final divorce decree awarded a fair and equitable division of the marital estate as she was not awarded any furniture, that the bank accounts she was awarded did not have the balances represented at the time of the final divorce decree, and that she never received any of those balances. Jewel stated that she would not have agreed to the division of the property as stated in the final divorce decree if she had been given the opportunity to have representation in the divorce, and she stated she was asking the trial court to grant the bill of review to allow her to obtain a fair ownership of the marital assets. The trial court denied the bill of review by order dated January 10, 2014.

On April 3, 2014, the trial court severed the bill of review proceeding from the probate proceeding. Jewel filed a Request for Findings of Fact and Conclusions of Law on April 14, 2014. Findings of Fact and Conclusions of Law were filed by the trial court on May 2, 2014. Jewel then filed a Request for Additional Findings of Fact and Conclusions of Law on May 12, 2014. In Jewel's request, Jewel expressly requested additional findings and conclusions as to:

> 1. factual issues and legal conclusions concerning Meritorious
> defense;
> 2. the justification for failure to assert a defense; and
> 3. whether the default judgment was rendered as a result of movants['] own fault or negligence.

7

The trial court then entered Amended Findings of Fact and Conclusions of Law on May 21, 2014. Jewel filed a Notice of Appeal on May 22, 2014, and she filed an Amended Notice of Appeal on June 4, 2014.

ISSUES PRESENTED

Jewel raises two issues on appeal. First, she contends that the trial court erred in denying the bill of review because she "put on uncontroverted evidence regarding: her meritorious defense to the property division in the default judgment; her husband's fraud against her which prevented her from filing an answer; her lack of negligence in failing to file an answer; and her justification for failing to file an appeal during the normal appeal period." Second, she argues that the "trial court's failure to make findings of fact and conclusions of law on certain mandatory issues involved in this Bill of Review appeal was harmful error." We consider Jewel's issues together.

APPLICABLE LAW AND STANDARD OF REVIEW

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010); *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam). A party seeking relief in a bill of review proceeding must plead and prove (1) a meritorious defense

8

to the underlying cause of action, (2) which the party was unable to present by virtue of fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any negligence of her own. *Caldwell*, 154 S.W.3d at 96 (citing *Baker v. Goldsmith*, 582 S.W.2d 404, 406-07 (Tex. 1979)).[1] Prima facie proof of a meritorious defense to the underlying claim may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion. *Martin v. Martin*, 840 S.W.2d 586, 591 (Tex. App.—Tyler 1992, writ denied).

Because a bill of review is a direct attack on a judgment, it must be brought in the court that rendered the original judgment, and only that court has jurisdiction over the bill. *Fernandez*, 315 S.W.3d at 504; *Martin v. Stein*, 649 S.W.2d 342, 346 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) (per curiam) ("A bill of review . . . is not a means of appeal of a judgment of one trial court to another trial court."). A bill of review must be filed within four years after the judgment is signed (absent extrinsic fraud). *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012).

---

[1] If the petitioner who seeks a bill of review claims she was not properly served and there has been a due process violation, then she may be relieved from establishing the first two elements. *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012). Jewel admits that she was properly served therefore she bore the burden to establish each element.

"In reviewing the grant or denial of a bill of review, every presumption is indulged in favor of the court's ruling, which will not be disturbed unless it is affirmatively shown that there was an abuse of judicial discretion." *Saint v. Bledsoe*, 416 S.W.3d 98, 101 (Tex. App.—Texarkana 2013, no pet.). A trial court abuses its discretion only "if it has acted in an unreasonable or arbitrary manner, or without reference to any guiding rules and principles." *Id.* at 101-02 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). When the inquiry on a petition for bill of review concerns a question of law, an appellate court reviews the trial court's decision *de novo*. *Mosley v. Dallas Cnty. Child Prot. Servs.*, 110 S.W.3d 658, 661 (Tex. App.—Dallas 2003, pet. denied); *see also In re L.N.M.*, 182 S.W.3d at 474.

Jewel asserts that she had a meritorious defense because the property division in the divorce decree of August 10, 2010, was unequal and not a just and right division of the marital property. Whether a prima facie meritorious defense is "made out" is a question of law for the trial court. *In re L.N.M.*, 182 S.W.3d at 474 (citing *Baker*, 582 S.W.2d at 408-09). A prima facie meritorious defense "'is made out when it is determined that the [alleged] defense is not barred as a matter of law and that [the petitioner] will be entitled to judgment on retrial if no evidence to the contrary is offered.'" *Mosley*, 110 S.W.2d at 661 (quoting *Baker*, 582 S.W.2d at

10

408-09); *see also Martin*, 840 S.W.2d at 591. "In cases involving bills of review to set aside divorce decrees regarding [a] division of property, courts have held that a meritorious claim is presented by proof that the petitioner "'would obtain a more favorable property division on retrial.'" *Elliott v. Elliott*, 21 S.W.3d 913, 919 (Tex. App.—Fort Worth 2000, pet. denied) (quoting *Martin*, 840 S.W.2d at 592).

Even if the petitioner establishes a meritorious defense, she must also prove that she was prevented from asserting her meritorious defense to the underlying suit because of fraud, accident, or wrongful conduct of the opposing party. *See Caldwell*, 154 S.W.3d at 96 (citing Baker, 582 S.W.2d at 406-07). Only extrinsic fraud will support a bill of review. *Tice v. City of Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud is fraud that denied a party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted. *Id.* Next, the petitioner must prove that she exercised due diligence to avail herself of all adequate legal remedies to set aside the underlying judgment.

Generally, a bill of review is available only when a party has exercised due diligence to avail herself of all adequate legal remedies against a former judgment. *See, e.g., Rizk v. Mayad,* 603 S.W.2d 773, 775 (Tex. 1980); *see also French v. Brown*, 424 S.W.2d 893, 895 (Tex. 1967) (if a party permits a judgment to become final by neglecting to file a motion for new trial, appeal, or appeal by writ of error,

11

then that party is precluded from proceeding on a bill of review unless the party shows a good excuse for the failure to exhaust adequate legal remedies). The party seeking relief under a bill of review should not have been responsible in any manner for permitting the judgment to be rendered. *Ortmann v. Ortmann*, 999 S.W.2d 85, 90 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Gone v. Gone*, 993 S.W.2d 845, 848 (Tex. App.–Houston [14th Dist.] 1999, pet. denied) (trial court correctly concluded that the husband's own negligence in failing to file an answer resulted in the default judgment against him, and the failure to prove his lack of negligence in appearing to contest the matter defeated his right to a bill of review.).

## ANALYSIS

Jewel argues that the trial court's findings did not address whether each of the specific bill of review requirements were met, "forcing appellant to guess at the reasons for its decision in denying the Petition for Bill of Review." In regards to the bill of review requirement that proof of a meritorious defense be made, Jewel asserts in her brief that, because the trial court's findings do not address this requirement, "[a]ppellant is left to guess if the trial court believed this factor had been met[.]" The trial court's determination about whether Jewel presented prima facie proof of a meritorious defense was a question of law. *In re L.N.M.*, 182

S.W.3d at 474. Thus, we review the record on this point *de novo*. *Mosley*, 110 S.W.3d at 661.

In her bill of review petition Jewel stated the following:

Plaintiff possesses a meritorious defense which Plaintiff was unable to present to the Court. The property division obtained by Defendant is grossly unequal and is not a just and right division. Claims to separate properties of Defendant for reimbursement were not included in the division. Properties were awarded without value calculations or with inaccurate statements of value. Plaintiff's home of 40 plus years was awarded to Defendant, depriving Plaintiff of her homestead.

At the hearing, Jewel offered her own testimony to support her allegation that the property division was unequal and not a just and right division of the marital estate. She also introduced a copy of the Final Decree of Divorce, a copy of Martin's contract with his divorce attorney, a copy of the Citation and Return showing Jewel was served with the divorce petition, and a copy of the Certificate of Last Known Address filed in the divorce.

In the Final Decree of Divorce the court awarded Martin certain household items in his possession, a tractor, boat, motor and trailer, sums currently in his possession and sole control, his retirement accounts with MeadWestvaco and Time Industries, a Chevrolet pickup truck, and any community interest in a .20 acre tract of land located on South Bowie Street. The decree awarded Jewel all sums of cash in her possession and sole control, including funds on deposit, in banks, including

13

but not limited to accounts in her name at Education First Credit Union in Beaumont, Texas, which were listed in the decree, all of her retirement, described by Jewel at the hearing as including "27 years of retirement with the Texas Retirement System," and a 1998 Ford Expedition. The decree went on to provide that there was certain separate real property that was owned by Martin was not part of the marital estate.

In her testimony at the bill of review hearing she testified as follows:

[Trial counsel:] Now, in the Final Decree of Divorce, the decree awards him all of the furniture in the house and it includes the beds in the master bedroom and the antique chest in the second bedroom and the love seat, La-Z-Boy, computer monitor, bookcase, record stereo, deep freeze, refrigerator, dishwasher, half of the pots and pans, icebox, all tools, barbecue pit, patio furniture, ironing board. It awarded him the tractor with all the implements, the boat, the motor, the trailer, all of the bank accounts in his name, his Temple retirement, the Chevy 1500 motor vehicle, and all community interest in the real estate, the houses.

Do you believe that is a fair and equitable division of your marital estate between the two of you?

[Jewel:] No, it's not.

[Trial counsel:] Did that leave you with even any furniture owning?

[Jewel:] No.

[Trial counsel:] Okay. And it says it awarded to you bank accounts containing $25,285, $43,060, and $6,078. Did you have bank accounts with those balances in it at that time?

[Jewel:] No.

[Trial counsel:] And so, did you actually receive any of that[]assets [*sic*]?

[Jewel:] No.

It is unclear from this testimony whether or not Jewel is saying she did not have those specific amounts in each of the listed Education First accounts or whether she is saying she did not receive any of the amounts in the listed accounts. Nevertheless, even if we assume she did not have or receive any of the funds in her Education First accounts, according to the Final Divorce Decree she received other assets in the divorce. Jewel provided no testimony or evidence about the value of any of the other assets that Jewel received in the divorce, nor did she provide any evidence of the value of the assets that Martin received. Accordingly, based on the evidence in the record, the trial court could have disbelieved her testimony or it could have reasonably concluded that there was no evidence from which the court could conclude that Jewel would obtain a more favorable property division on retrial even if her allegations were true. After reviewing the entire record before us and considering the testimony by Jewel regarding the basis for her bill of review proceeding, as well as the property division contained in the divorce decree, we conclude that Jewel failed to demonstrate that she would obtain a more favorable property division on retrial and she failed to present a meritorious defense. *See*

15

*Elliott*, 21 S.W.3d at 920; *Hartsfield v. Wisdom*, 843 S.W.2d 221, 224 (Tex. App.—Amarillo 1992, writ denied); *see also Arndt v. Arndt*, 714 S.W.2d 86, 88 (Tex. App.—Houston [14th Dist.] 1986, no writ) (holding evidence of disproportionate property division based on values three years after divorce was not prima facie proof of meritorious claim); *Earp v. Earp*, 688 S.W.2d 245, 247-48 (Tex. App.—Fort Worth 1985, no writ) (holding evidence of disproportionate property division in that husband received 63% of marital estate did not present prima facie proof of meritorious defense); *c.f. Martin*, 840 S.W.2d at 590-92 (holding bill of review plaintiff offered prima facie proof of her meritorious claim where evidence showed company's financial condition was "entering into a period of prosperity" and not in a "precarious financial condition" as represented, and had $6 million in retained community income unknown to plaintiff at time of divorce); *Kessler v. Kessler*, 693 S.W.2d 522, 526 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (a prima facie meritorious defense was presented where evidence conclusively showed husband fraudulently concealed community property cash deposit of $8,310.84). Because our conclusion that Jewel failed to show a prima facie meritorious defense is dispositive of this appeal, we need not address whether Jewel met the other bill of review requirements. *See, e.g., McDaniel v. Hale*, 893 S.W.2d 652, 675 (Tex. App.—Amarillo 1994, writ denied).

Nevertheless, even if we assumed Jewel met her burden to demonstrate a meritorious defense, we conclude that Jewel also failed to establish that her failure to present her alleged meritorious defense was as a result of the extrinsic fraud, accident, or wrongful conduct of Martin. *See Caldwell*, 154 S.W.3d at 96; *Tice*, 767 S.W.2d at 702. Jewel contends that Martin's "fraud in hiding the fact that he intended to pursue the divorce and then hiding the fact that the divorce occurred, coupled with the inequitable property division, acts as grounds to grant the Bill of Review in this case." Jewel argues in her appellate brief that Martin's oral statements to Jewel that he decided not to go through with the divorce were not precluded by the Dead Man's Statute, and that those statements were admissible because they were corroborated by other evidence. She also argues that evidence of Martin's oral statements to Jewel that he decided not to go through with the divorce should have been considered by the trial court because they were admitted without objection during the cross-examination of Jewel.

The relevant version of Texas Rule of Evidence 601, otherwise known as the "Dead Man's Rule" or Dead Man's Statute[,]" provides, in relevant part:

> **(b) "Dead Man's Rule" in Civil Actions.** In civil actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify

17

thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent based in whole or in part on such oral statement. Except for the foregoing, a witness is not precluded from giving evidence of or concerning any transaction with, any conversation with, an admissions of, or statement by, a deceased or insane party or person merely because the witness is a party to the action or a person interest in the event thereof. . . .

Tex. R. Evid. 601(b) (amended 2015). The rule does not prohibit testimony concerning statements by the deceased that are properly corroborated. *Quitta v. Fossati*, 808, S.W.2d 636, 641 (Corpus Christi 1991, writ denied) (citing *Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex. 1981).

The trial court included in its Additional Findings of Fact and Conclusions of Law that "[e]vidence concerning conversations between Martin V. Curtis, Jr. and Jewel Curtis were inadmissible under the Texas Rules of Evidence 601(b)." We first address Jewel's argument that the application of the Dead Man's Statute was waived because Jewel testified without objection during cross-examination to statements made by Martin to her.[2] When the party entitled to the protection of the rule calls the adverse party to the stand and asks about a transaction with or statement by the decedent, the rule is waived as to that statement. *Seaman v. Seamon*, 425 S.W.2d 339, 342 (Tex. 1968) (applying former Dead Man's Statute).

---

[2] Jewel does not provide record references for the testimony elicited on cross-examination that she claims created the waiver.

A waiver does not occur, however, when the opposite party merely cross-examines the witness at trial about matters brought out over his objection on direct examination. *Chandler v. Welborn*, 294 S.W.2d 801, 809 (Tex. 1956). Here, Jewel's answers regarding Martin's statements to her were made by her in response to questions from her own attorney regarding matters brought out over the opposing party's objection on direct examination. Therefore, no waiver occurred. *See id.*

Jewel asserts that Martin's oral statements that he had "changed his mind" and decided not to go through with the divorce were corroborated by: (1) the testimony that following the discussion, the parties continued to cohabitate as husband and wife; (2) the testimony of Appellant that she would not have cohabitated with a man that was divorcing her, or from whom she was divorced; (3) the testimony of appellant as to the lack of further discussion between her and Decedent as to the divorce proceeding with the divorce after the initial conversation; and ( 4) by the fact that following the filing of the suit and service of the papers, in January of 2010, the divorce was not actually finalized until August of 2010 (when by law it could have been finalized by a default divorce in March of 2010).

Corroborating evidence must tend to support some of the material allegations or issues that are raised by the pleadings and testified to by the witness whose evidence is sought to be corroborated. *Quitta*, 808, S.W.2d at 641 (citing *Lewis*, 621 S.W.2d at 404). Corroborating evidence may come from other competent witnesses or another source, including documentary evidence. *Id.* Corroborating evidence need not be sufficient standing alone, but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth. *Id.* For example, it is sufficient if the corroborating evidence shows conduct by the deceased that is generally consistent with the testimony concerning the deceased's statements. *Id.*

We disagree that the evidence identified by Jewel properly corroborated the excluded oral statements Martin purportedly made to her. Jewel's testimony about what Martin told her or what Martin did would be self-serving and does not provide testimony "from any *other* competent witness or legal source." *See id.* (emphasis added). The fact that the divorce was not finalized until August of 2010, could have been a result of many circumstances, and therefore, does not "tend to confirm and strengthen" Jewel's testimony and "show the probability of its truth. *See id.* We cannot say that the trial court abused its discretion in determining that that the complained-of excluded statements were inadmissible. *See Owens-Corning*

*Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (appellate courts review the trial court's evidentiary rulings for an abuse of discretion). Accordingly, we conclude that Jewel failed to establish that her failure to assert her meritorious defense was the result of the extrinsic fraud, accident, or wrongful conduct of Martin.

Issues one and two are overruled. We affirm the trial court's order denying appellant's bill of review.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 29, 2014
Opinion Delivered September 24, 2015

Before Kreger, Horton, and Johnson, JJ.